**Susan E. MORROW, an incompetent, et al., Appellees,**

v.

**GREYHOUND LINES, INC., a corporation, Appellant.**

**Susan E. MORROW, an incompetent, et al., Appellees,**

v.

**Douglas H. HUBER, Appellant.**

**Nos. 75–1758, 75–1703.**

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1976.

Decided Sept. 1, 1976.

Rehearing Denied in No. 75–1758 Sept. 24, 1976.

Martin E. Juncker, Clayton, Mo., for Huber.

George J. Miller, Miller & Sarkisian, St. Louis, Mo., for Greyhound; Thomas B. Hayes, Jr., St. Louis, Mo., on the brief.

John C. Shepherd, argued, John S. Sandberg and John R. McFarland, St. Louis, Mo., for appellees.

Before VOGEL, Senior Circuit Judge, and HEANEY and HENLEY, Circuit Judges.

VOGEL, Senior Circuit Judge.

Appellants Greyhound and Huber appeal from a final judgment against all defendants in the amount of $1,813,000 for damages arising out of a multi-vehicle collision which occurred March 23, 1974, in Montgomery County, Missouri. Appellant Greyhound asserts the district court erred by:

I. Denying appellant's motion for directed verdict, which claimed no act of Greyhound was a proximate cause of appellee's injures;

II. Failing to grant appellant's motion for new trial based on excessive jury award;

III. Admitting expert testimony on the rate of future inflation; and

IV. Instructing the jury improperly.

Appellant Huber also asserts a lack of proximate causation of appellee's injuries and challenges the court's instruction as to excessive speed.

Appellee's claim arose out of a multi-vehicle collision in the westbound traffic lanes of Interstate 70 at about 9:30 A.M., March 23, 1974. Suit was filed by appellees Eugene M. and Delores J. Morrow, actual parents and legal guardian for the person and estate of Susan Morrow, an incompetent.

I–70 is a four-lane divided limited access highway. On the morning of March 23, 1974, snowfall was heavy, resulting in slippery road conditions and a visibility of about 660 feet. At about 9:00 A.M., at a location along I–70 known as Mineola Hill,

a vehicle driven by a Mrs. Shelburne slid off the westbound lanes and came to a stop against the embankment on the north side of the road. The Missouri State Highway Patrol was summoned and Officer Gary E. Lutes arrived shortly thereafter, parking his vehicle on the north paved shoulder of the highway. Neither the Shelburne nor the Highway Patrol vehicle was in the lanes of traffic. About 20 minutes thereafter another westbound vehicle went off the road on Mineola Hill and came to rest in the median. A few minutes later a wrecker arrived and parked in the median and partially on the median shoulder. Officer Lutes went over to the wrecker in the median and saw two tractor-trailers approaching in the westbound lanes side by side. The passing lane was occupied by the tractor-trailer of defendant Johnson Trucking Company (not a party to this appeal), a United States mail contract carrier. The Johnson driver saw Officer Lutes on the left shoulder, and, believing that Officer Lutes wanted him to stop, applied his brakes, finally bringing his vehicle to a halt just east of the wrecker and sitting in the passing lane. Before Officer Lutes could get the Johnson truck moved, defendant-appellant Douglas Huber approached, observed the Johnson vehicle, and began to brake. Huber finally skidded to a rest at a 90-degree angle in the right lane of traffic just east of the Johnson vehicle, thus now blocking both lanes of traffic. Appellant's Greyhound bus then approached in the right lane. Orville James, the Greyhound driver, observed from about 300 to 375 feet away that both the passing and right lanes were blocked and began to brake. James maneuvered towards the right shoulder, but struck the Huber vehicle in the area of its right front wheel. The impact pushed the Huber vehicle off the road and into the median, while the bus came to rest at an angle about 30 degrees with the road, in approximately the same location previously occupied by the Huber vehicle. Within a matter of seconds thereafter a vehicle driven by defendant John Webb (not a party to this appeal), in which appellee Susan Morrow was a passenger, approached in the right lane, braked, and then collided with the bus. As a result of this collision Susan Morrow suffered extensive and tragic injuries, including brain damage, spasticity, and paralysis in several areas of her body.

On November 26, 1974, Susan was adjudged incompetent by a North Carolina court, appointing her father, Eugene M. Morrow, trustee of her estate, and her mother, Delores J. Morrow, as personal custodian.

Appellees brought this action for negligence against Johnson, Huber, Greyhound and Webb. Only defendants Greyhound and Huber pursue this appeal.

At trial, appellees' expert medical testimony indicated that the brain damage caused by the collision resulted in extreme mental impairment, with Susan registering a post-accident IQ of 72, placing her in the "borderline defective" level of intelligence. Her "effectiveness" is estimated to be that of a ten-year-old and she requires constant care and supervision. Partial paralysis of the left side remains and spasticity continues to be severe. Speech is limited and monotoned. Susan experiences balance problems and as a result has difficulty sitting up. Susan's doctors testified at trial that her injuries are of a type which are generally fixed and thus she has already approached her maximum level of improvement. Physical, occupational and speech therapy is planned on a permanent basis, however, to prevent any regression in her condition. While Susan is able to live at home now, nursing care is nonetheless required the majority of each day, and in the future it may be necessary to transfer Susan to a nursing care facility.

Testimony for appellees showed damages which totaled $1,813,965.09. Appellees' prayer for $1,750,000 was subsequently amended to $1,813,000. The jury returned a verdict in favor of appellees and awarded damages of $1,813,000.

I. PROXIMATE CAUSE

Appellant Greyhound's first argument is that the district court erred in overruling Greyhound's motions for a directed verdict

because there was no evidence that any negligent act of Greyhound was a proximate cause of appellee's injuries. The district court submitted the issue to the jury under the following instruction:

In order for Plaintiff to recover against Defendant Greyhound Lines, Inc., you must believe that Greyhound was negligent and that such negligence directly caused or directly contributed to cause damage to the Plaintiff.

Therefore, Plaintiff is entitled to a verdict against Defendant Greyhound Lines, Inc. if Greyhound was negligent in one or more of the following respects:

(a) Driving at an excessive speed; or

(b) Defendant knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped, swerved, or slackened its speed and swerved but Defendant failed to do so

and as a result of such negligence Greyhound either directly caused or directly contributed to cause damage to the Plaintiff.

First, Greyhound argues that the evidence establishes that a collision would inevitably have occurred—either between Greyhound's bus and the Webb vehicle, or between the Huber vehicle and the Webb vehicle, and that appellee would have sustained her injuries anyway, with or without Greyhound's negligence. Second, Greyhound argues that Webb's negligent inattentiveness in failing to avoid collision with the Greyhound bus was an intervening cause of appellee's injuries, thus effectively negating any causal link to appellee's injuries of any Greyhound negligence.

It is well settled under Missouri law that the causal connection between negligence and harm may be established by circumstantial evidence from which the connection may reasonably be inferred. *Phillips v. Stockman*, 351 S.W.2d 464, 473 (Mo. App.1961); *Steele v. Woods*, 327 S.W.2d 187, 195 (Mo.1959); *Fireman's Fund Ins. Co. v. Aalco Wrecking Co., Inc.*, 466 F.2d 179, 184 (8th Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973). To establish proximate cause, it is sufficient if there is substantial evidence which shows that the injury is a natural and probable consequence of the negligent act or omission. *Dickerson v. St. Louis Public Service Co.*, 365 Mo. 738, 286 S.W.2d 820, 824 (1956); *Steele v. Woods, supra*, at 195. It is enough that appellant's negligence was a "substantial factor" in producing appellee's injuries, *Ricketts v. Kansas City Stockyards Co.*, 484 S.W.2d 216, 221–22 (Mo. en banc 1972), and appellant Greyhound's negligence need not be the sole proximate cause. *Cluck v. Snodgrass*, 381 S.W.2d 544, 548 (Mo.App.1964); *Gaines v. Property Servicing Co.*, 276 S.W.2d 169, 173–74 (Mo.1955).[1]

The question thus presented is whether the evidence, viewed in a light most favorable to appellees, was sufficient for the jury to reasonably conclude that appellant Greyhound, by either (a) traveling at an excessive speed or (b) negligently failing to stop or swerve to avoid collision with Huber, was a substantial factor in causing appellee's injuries.

Greyhound does not challenge the sufficiency of evidence of excessive speed or whether as a result of that excessive speed Greyhound collided with appellant Huber, but rather whether its collision with Huber substantially caused the collision with the Webb vehicle in which appellee received her injuries. We find sufficient evidence from which the jury could infer that it did.

First, the evidence most favorable to appellee indicated that appellant Huber's

---

1. While several Missouri cases consider the issue of "causal connection" as a separate threshold "but for" test prerequisite to submission of the issue of proximate cause to the jury, see *Phillips v. Stockman, supra; Steele v. Woods, supra; Boese v. Love*, 300 S.W.2d 453, 458 (Mo.1957); *Branstetter v. Gerdeman*, 364 Mo. 1230, 274 S.W.2d 240, 245 (1955), others proceed simply in terms of a single examination of the sufficiency of the evidence of proximate cause. *See Gass v. Knittig*, 396 S.W.2d 26, 28 (Mo.App.1965); *Cluck v. Snodgrass, supra; Dickerson v. St. Louis Public Service Co., supra; Floyd v. St. Louis Public Service Co.*, 280 S.W.2d 74, 78–79 (Mo.1955). The approaches are, in essence, identical.

vehicle blocked primarily the right lane of the highway, leaving room to pass on the right 10-foot paved shoulder and 8-foot unpaved shoulder. When the bus came to rest, however, it blocked the right lane, and, in addition, the paved and unpaved shoulders of the north side of the road. It was a factual question for the jury whether Webb could have avoided the accident by using the shoulder.

Secondly, the angle of the bus after its collision with the Huber vehicle was estimated to be from 30 to 55 degrees off axis with the highway. Appellees' expert evidence at trial indicated that the visibility of Greyhound's taillights decreased dramatically as the side angle from which they were viewed increased. It was for the jury to determine whether Greyhound's excessive speed resulted in the collision with the Huber vehicle and, consequently, its off axis position. Similarly, it was appropriate for the jury to decide whether Webb could have avoided the collision had there been a warning from the taillights of the bus. The jury could thus in the two above-mentioned ways conclude that Greyhound's excessive speed was a proximate cause of appellee's injuries.

Alternatively, the jury could reasonably find that appellant Greyhound, by negligently failing to stop, swerve, or slacken its speed and swerve, thereby collided with Huber and that collision was a proximate cause of appellee's injuries. Under Missouri law a driver has a duty in certain circumstances to pull his vehicle off the road and into a median to prevent following vehicles from colliding with it. *See Stemme v. Siedhoff*, 427 S.W.2d 461, 464 (Mo.1968). The estimates of the time between the Huber collision and the Webb collision ranged up to as long as one minute. It was thus possible for the jury to conclude that had Greyhound not collided with Huber, Huber would have had sufficient time to move his vehicle safely off the road.

Greyhound further argues that the negligence of defendant Webb in failing to see the bus and take evasive action until he was only from 45 to 60 feet away was an intervening cause of appellee's injuries.

In Missouri, an intervening cause is a new and independent force which so interrupts the chain of events as to become the responsible proximate cause rendering any prior negligence too remote to operate as the proximate cause. *Dickerson v. St. Louis Public Service Co., supra*, 286 S.W.2d at 824; 65 C.J.S. Negligence § 111, pp. 1198–1225. However, it may not consist merely of an act of concurring negligence. *Id.* As noted above Greyhound's own negligence may have been substantially responsible for Webb's belated appreciation of the danger. A driver must reasonably foresee the probability of some injury from his negligent acts, not only from careful drivers of other vehicles but also from negligent ones, so long as the act of the other driver is not so "extraordinary" as to be not reasonably foreseeable. *Dickerson v. St. Louis Public Service Co., supra*, 286 S.W.2d at 824; *Cox v. Wrinkle*, 267 S.W.2d 648 (Mo.1954). Any negligence on the part of defendant Webb was clearly not "extraordinary". The district court did not err in submitting to the jury the issue of Greyhound's proximate causation of appellee's injuries.

We turn next to appellant Huber's argument of lack of proximate cause. Most substantial evidence placed the location of the stopped Johnson tractor-trailer unit in the left or passing lane. Thus, at the time that appellant Huber approached the Johnson vehicle the right or traffic lane was still passable. Even by Huber's own testimony that the Johnson vehicle extended about four feet into the right or traffic lane (the Johnson vehicle was eight feet wide), there were eight feet of the 12-foot driving lane and 10 feet of paved shoulder still open, through which appellant Huber might safely have maneuvered his vehicle. However, Huber braked, skidded and came to a rest sideways, partially in the right lane and partially on the shoulder, thus creating a hazard to traffic behind him.

Appellant Huber asserts that his acts, even if found negligent, were but a passive condition in causing appellee's inju-

ries, superseded by the negligence of Greyhound in not swerving to avoid a collision, and defendant Webb for his inattentive driving. However, we believe it was reasonable for the jury to conclude that without the negligent act of appellant Huber in bringing his car to a stop on a portion of the highway normally reserved for moving traffic, the collision of the bus and the Webb vehicle in which appellee was riding might never have occurred.

Appellant Huber relies on the case of *Branstetter v. Gerdeman*, 364 Mo. 1230, 274 S.W.2d 240 (1955), in which the front driver in a chain collision was found not to be a proximate cause of the collision. An action was brought by the passenger in the first vehicle for injuries suffered when, after the first vehicle was required to stop in traffic, a third vehicle crashed into the rear of a second vehicle, causing it to strike the first. There, however, the sole issue was whether the failure of the driver of vehicle 1 to give a hand signal as required by law was the proximate cause of the collision. The court's holding is inapposite here for two reasons. First, vehicle 1 *had* to stop to avoid collision with cars in front of it. Secondly, the court found that vehicle 2 had sufficient forewarning from the taillights of vehicle 1 since it successfully came to a stop, and collided with vehicle 1 only after vehicle 3 knocked it into vehicle 1. The court found that the driver of vehicle 3 was completely unaware of the presence of vehicles 1 and 2 until the time of impact and could thus not have seen an arm signal of the driver of vehicle 1 in any event.

As noted above, the evidence of the extent to which defendant Webb was inattentive was equivocal. Moreover, as discussed above, the fact of some concurring negligence on the part of Greyhound and Webb will not of itself relieve Huber of liability. Appellant Huber by negligently blocking the highway could reasonably have anticipated a negligent failure to stop by vehicles approaching to his rear. We cannot say as a matter of law that the subsequent acts of appellant Greyhound and defendant Webb were so extraordinary as to constitute intervening cause.

In a previous tort litigation under Missouri law, this court had occasion to remark:

There are many instances in tort litigation where precise causation becomes difficult to prove. * * * each requires a judgment of whether the defendant's conduct causally contributed to the harm. A plaintiff does not have the negative burden to show that the harm could not have possibly occurred if the defendant had performed the duty breached. *Fireman's Fund Ins. Co. v. Aalco Wrecking Co., Inc., supra*, 466 F.2d 179, 185 (8th Cir. 1972).

Under all the above circumstances, we conclude that the evidence was sufficient for the jury to find that appellants Greyhound and Huber were concurrent proximate causes of appellee's injuries.

## II. EXCESSIVE VERDICT

Appellant Greyhound next argues that the damages awarded to appellees were excessive and consequently the trial court erred in failing to grant Greyhound's motion for a new trial on that ground. Prior to *Solomon Dehydrating Co. v. Guyton*, 294 F.2d 439, 446–48 (8th Cir. 1961), *cert. denied*, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1962), it was the policy of this court to leave the review of judgments claimed to be excessive solely with the trial judge on a motion for a new trial. *Id.* at 446. This was grounded in the fact that the trial court has the benefit of hearing the testimony and of observing the demeanor of the witnesses and knows the community and its standards. *Id.* at 447. Since *Solomon Dehydrating Co.* we have adhered to the view that we would examine excessiveness of a verdict "not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is 'plain injustice' or a 'monstrous' or 'shocking' result." *Id.* at 447–48. *Krall v. Crouch Brothers, Inc.*, 473 F.2d 717, 719 (8th Cir. 1973); *Scoville v. Missouri Pacific R. Co.*, 458 F.2d 639, 647 (8th Cir. 1972); *O'Brien v. Stover*, 443 F.2d 1013, 1019 (8th Cir. 1971);

*Perry v. Bertsch*, 441 F.2d 939, 944 (8th Cir. 1971).

In diversity cases, this court has always taken care to see that damage awards do not exceed those which could be sustained were the case before the Supreme Court of the state whose substantive law gives rise to the claim. *Bankers Life & Casualty Co. v. Kirtley*, 307 F.2d 418, 423–26 (8th Cir. 1962); *Perry v. Bertsch, supra*, at 943–44; *Scoville v. Missouri Pacific R. Co., supra*, at 648. Appellant Greyhound argues that the damages awarded appellee here were out of conformity with Missouri awards for similar injuries contrary to Missouri's "rule of reasonable uniformity" of verdicts. None of the cases cited by appellant, however, involved injuries sufficiently similar to those suffered by appellee in the instant case to serve as an appropriate measure. *Morris v. Israel Brothers, Inc.*, 510 S.W.2d 437 (Mo.1974), the principal case relied upon by appellant, involved injuries considerably less extensive than those suffered by appellee. Furthermore, the issue before the Missouri Supreme Court was the adequacy, and not the excessiveness, of damages. The Supreme Court upheld the trial court's order of remittitur which reduced a verdict of $480,966 to $280,966, refusing to find that the damages were inadequate as a matter of law. The Missouri court thus reaffirmed its own policy of great deference to the trial court in matters of excessiveness of verdict. The *Morris* case is hardly supportive, therefore, of appellant's argument that we should disturb the district court's action here.

While prior Missouri awards are not comparable in size to that challenged here, we note that in other jurisdictions, in cases involving severe injury and permanent impairment similar to Susan Morrow's, courts have refused to overturn as excessive damage awards that approach or exceed the amount allowed in this case. For example, the Third Circuit has recently refused to find excessive an award of $2,059,946.25 to a woman injured through ingestion of a polio vaccine. *Griffin v. United States*, 500 F.2d 1059 (3d Cir. 1974). That court said:

We have reviewed the district court's assessment of damages and, contrary to the Government's position, "we cannot say that the award was in any way shocking, unfair or biased." The hospital and medical bills as of the time of trial in July 1972 totaled $89,223.25. After considering plaintiffs' expert's calculations the court awarded $421,581.00 as future medical expenses, based on a 25-year life expectancy and a very modest inflation factor of 2½ percent, and $49,142.40 as Mrs. Griffin's impairment of future earning capacity. Thus, special damages alone totaled $559,946.65.

After finding that Mrs. Griffin's sensitivity to pain has not been impaired by her condition; * * * and realizing that she had a 25-year life expectancy, the district court awarded $1,200,000 for her pain and suffering. In addition the court awarded Mr. Griffin $300,000 for past and future loss of consortium.

As Judge Hastie stated in *Frankel v. Heym*, 466 F.2d 1226, 1228 (3d Cir. 1972):

> The problem here is inherent in any effort to translate . . . catastrophic human loss . . . into money damages. In this process systematic logic is not helpful and precision is not achievable.

> The district court's dispassionate opinion reflects the relevant considerations that led to its determination of damages. We cannot say that the award was in any way shocking, unfair or biased. 500 F.2d at 1070–1071.

In *Frankel v. Heym*, the Third Circuit held that an award of over $1,100,000 to a young woman injured in an automobile accident was not excessive compensation for loss of earning capacity, past medical expenses, pain and suffering, and the cost of future institutionalization. A federal district court in this circuit has held that an award of $1,000,000 to a young seaman whose injury resulted in permanent paralysis below the neck was not excessive in light of the seaman's future earning capacity and the cost of future hospitalization. *Brinegar v. San Ore Construction Co.*, 302 F.Supp.

630 (E.D.Ark.1969). We also note that in recent personal injury cases several state courts have upheld, as not excessive, damage awards approaching or greater than the award granted Susan Morrow in this case. *See, e. g., Wry v. Dial*, 18 Ariz.App. 503, 503 P.2d 979 (1973) ($3,500,000); *General Electric Co. v. Bush*, 88 Nev. 360, 498 P.2d 366 (1972) ($3,000,000 plus); *Talcott v. Holl*, 224 So.2d 420 (Fla.App.1969) ($1,500,000); *Williams v. State Highway Department*, 44 Mich.App. 51, 205 N.W.2d 200 (1972) ($1,100,000).

Moreover, comparison with other damage awards is but one of the factors used by Missouri courts in evaluating size of a verdict. Others include the nature and extent of plaintiff's injuries, the permanency of plaintiff's injuries, plaintiff's age, due regard for economic factors (*e. g.*, inflation), and an awareness that the jury and trial court had a superior opportunity to appraise plaintiff's injuries. *Woodford v. Illinois Central-Gulf R. Co.*, 518 S.W.2d 712, 718 (Mo.App.1974); *Best v. Fred Weber Construction Co.*, 525 S.W.2d 102, 106–07 (Mo.App.1975); *Helming v. Dulle*, 441 S.W.2d 350, 354 (Mo.1969). The award must be further reviewed, therefore, in light of the evidence of damages adduced at trial to sustain it.

In rejecting a claim of excessive verdict in *MacDonald Engineering Co. v. Hover*, 290 F.2d 301 (8th Cir. 1961), this court observed:

"The verdict is both obviously large and surprising in comparison with the dollar figures of past verdicts in the area, *but upon a basis of the evidence in the case from which the jury could have arrived at the amount, it neither shocks the conscience nor fails to effectuate justice.*" (Emphasis supplied.) 290 F.2d at 307–308, quoting 183 F.Supp. 427, 431.

Again, sustaining an award in a wrongful death action that was more than twice the size of the highest award ever to be sustained by the Supreme Court of Arkansas, we noted:

Certainly, then, if the Arkansas award of a lesser amount is to supply the high-water mark for all wrongful death cases, this would tend to suggest that the awards here are indeed generous and perhaps excessive. *But, while recognizing that the comparison approach is helpful and sometimes forceful, this court has said that each case must be evaluated as an individual one, within the framework of its distinctive facts, with some recognition being given the continuing erosion in the purchasing power of the dollar.* (Emphasis supplied.) *Scoville v. Missouri Pacific R. Co., supra*, 458 F.2d 639, 648 (8th Cir. 1972).

Turning to the distinctive facts of this case, the record shows that appellee's evidence of damages rested primarily upon the testimony of its economic expert, Dr. Frederick Kirby. Dr. Kirby testified as to the present value of appellee's earned income loss ($401,379), fringe benefit loss ($36,926), nursing home care ($819,786), future medical examinations ($12,329), and future therapy ($485,173). Appellee's father testified that accrued medical and miscellaneous expenses totaled $58,372.09. As noted above, appellee has a normal additional life expectancy of over 56 years, and a 3.1 percent per annum inflation rate was taken into consideration. The total amount of damages testified to was $1,813,965.09; the verdict amount was $1,813,000. Appellant presented no direct evidence of jury bias or prejudice. Under all these circumstances, and particularly in view of the fact that appellant made no objection to appellee's expert testimony (discussed *infra*), we find that the amount of the jury award, while very generous to appellee, was reasonably grounded in the evidence presented at trial, and was not so shockingly excessive as to constitute a "plain injustice".

## III. EXPERT TESTIMONY ON FUTURE INFLATION

Appellant Greyhound next raises the issue of whether the district court erred in denying appellant Greyhound's motion for a new trial on the grounds that the testimony of appellee's economic expert on the impact of future inflation projected to the year 2014 was so speculative as to be inadmissi-

ble. Appellee offered the testimony of Dr. Frederick Kirby, professor of economics at the University of Missouri and Rockhurst College in Kansas City. Dr. Kirby testified to a general trend of inflation in the United States and to the likelihood of its continuance. He estimated that appellee had an additional work life expectancy of 40 years. He then calculated present value figures based upon 3.1 percent average inflation during that period, until the year 2014. Dr. Kirby then projected that appellee would receive annual income increases as an elementary special education teacher of 5.4. percent per year, and would incur annual increases in the cost of nursing home care of 5.9 percent, physical services 4.5 percent, and physical therapy 5.8 percent, all through appellee's additional life expectancy of 56.5 years.

Appellant argues that such testimony is inadmissible under the holdings of this court in *Riha v. Jasper Blackburn Corp.*, 516 F.2d 840 (8th Cir. 1975), and *Johnson v. Serra*, 521 F.2d 1289 (8th Cir. 1975). In *Riha*, a Nebraska diversity case, this court reversed a jury verdict where plaintiff's economist had projected a specific annual inflation rate over plaintiff's work expectancy, projected to the year 2005. We held, based on a decision of the Nebraska Supreme Court,[2] that such a precise mathematical projection by an economist using an inflation factor of 7 percent was too conjectural, and the state of economics too imprecise for its experts to do more than speculate as to the state of the economy in the future. In *Johnson*, a Minnesota diversity case, although no Minnesota case was found in point, it was concluded that the Minnesota Supreme Court would probably exclude testimony of an economist's projection, in a wrongful death action, of an 8 percent inflation rate over decedent's work expectancy to the year 2000. In both cases we considered ourselves bound by the respective state substantive law of damages. *Johnson, supra*, at 1294–1295; *Riha, supra*, at 843.

We note, first, that appellant has been unable to cite and we have not found any Missouri appellate case holding expert evidence on future inflationary trends inadmissible. However, we find it unnecessary to analyze the issue further because appellant failed to make any objection on these grounds to the admissibility of Dr. Kirby's testimony in the trial court below. Appellant Greyhound made only a single and narrow objection to a portion of Dr. Kirby's testimony, and this objection did not bear on the alleged error now asserted on appeal. Neither did appellant raise the issue in its motion for a new trial.[3]

---

**2.** *Segebart v. Gregory*, 160 Neb. 64, 69 N.W.2d 315 (1955).

**3.** Appellant made the following objection during the direct examination of Dr. Kirby by appellee's counsel:

    Q What data have you considered with reference to the necessary therapy for Susan?

    A The data would include physical therapy at a current cost of $22 per hour at three hours per week, 52 weeks a year; occupational therapy at $16 per hour, three hours per week, 52 weeks per year; speech therapy at $12 per hour, three hours per week, 52 weeks per year, for a total current cost given these hours—

    MR. MILLER: Your Honor, may we make an objection here unless it be shown that this professor knows the period of time in which Susan Morrow will be required to have physical therapy at this particular rate on a yearly basis and for how long during her lifetime.

The only reference to Dr. Kirby's testimony in appellant Greyhound's motion for new trial was as follows:

    19. That the Court erred in allowing into evidence the testimony of witness Dr. Kirby insofar as the future costs of physical, occupational and speech therapy of the plaintiff for the reason that there was no substantial evidence as to the number, extent or length of time over which such therapy would be given.

    20. That there was no evidence of future damages, other than of a speculative and uncertain nature, as to justify the amount of the verdict.

While the reference to "speculative evidence" might be construed as a passing reference to Dr. Kirby's testimony on future inflationary trends, it seems clear that the thrust of the objection in Point 20 is excessiveness of damages, and the language is, in any event, too remote to clearly bring the issue to the district court's attention.

It is old and well-settled law that issues not raised in the trial court cannot be considered by this court as a basis for reversal. *American General Finance Corp. v. Parkway B. & T. Co.*, 520 F.2d 607, 608 (8th Cir. 1975); *Hinton v. C.P.C. International, Inc.*, 520 F.2d 1312, 1314 (8th Cir. 1975); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 184 (8th Cir. 1975); *United States v. MacDonald Construction Co.*, 417 F.2d 687, 692 (8th Cir. 1969); *Smith v. American Guild of Variety Artists*, 368 F.2d 511, 514 (8th Cir. 1966), *cert. denied*, 387 U.S. 931, 87 S.Ct. 2052, 18 L.Ed.2d 991 (1967); *Hammerstein v. Kelley*, 349 F.2d 928, 930 (8th Cir. 1965); *Adams Dairy Co. v. St. Louis Dairy Co.*, 260 F.2d 46, 56 (8th Cir. 1958). *See*, Rule 46, F.R.Civ.P.; Rule 103(a)(1), Federal Rules of Evidence (effective July 1, 1975). The purpose of the rule is to inform promptly the trial judge of possible errors so that he may have an opportunity to reconsider his ruling and make any changes deemed desirable. Alternatively, the opposing party may decide to forego reliance upon the evidence. The rule is adhered to save in exceptional cases where the obvious result "would be a plain miscarriage of justice", *Hormel v. Helvering*, 312 U.S. 552, 558, 61 S.Ct. 719, 722, 85 L.Ed. 1037 (1941), or "inconsistent with substantial justice". Rule 61 F.R.Civ.P.

Appellant argues that Rule 61 is an appropriate remedy in this case since the decision in *Johnson v. Serra*, *supra*, had not yet been rendered at the time this case was tried. A similar argument was rejected by this court in *Gardner v. Meyers*, 491 F.2d 1184 (8th Cir. 1974), where appellant relied on a recent California ruling to buttress her argument that a similar Nebraska guest statute was unconstitutional. This court responded:

> This issue is one that was never raised at trial. Appellant argues that this should not deter us from deciding the question now, because the *Brown* decision was not handed down until the day the jury returned in the case below. This fact goes to the weight of the appellant's authorities, not as an excuse for not raising the issue below. Appellant was not restricted from arguing this point at trial, only in supporting her argument. It is a well-established rule in this circuit that defenses not raised or litigated in the trial court cannot be urged for the first time on appeal. 491 F.2d at 1190.

Accordingly, we conclude that appellant's failure to properly object to the admissibility of Dr. Kirby's inflation testimony precludes our consideration of that issue on this appeal.

## IV. JURY INSTRUCTIONS

Several allegations of error in the jury instructions are raised. Appellant Huber challenges the instruction as to him on excessive speed. Appellant Greyhound challenges the verdict-directing instruction, quoted above, on the grounds that it confuses the two collisions in which the Greyhound bus was involved, and on the ground that the excessive speed instruction was in error because the bus was at rest at the time of impact. Greyhound also asserts error in the district court's refusal of Greyhound's proffered instruction on proximate cause. We take the objections in order.

First, appellant Huber argues the district court erred in submitting the issue of his excessive speed to the jury because (a) there was no evidence of excessive speed and (b) the fact that he was able to stop his vehicle without colliding with defendant Johnson conclusively shows his speed was not excessive. We are satisfied that there was ample evidence to warrant the submission of the issue of Huber's excessive speed to the jury. Officer Lutes testified that Huber was traveling at from 40 to 45 miles per hour. Weather conditions were severe. Appellant skidded and came to a stop at a 90-degree angle on the highway. Under these circumstances, appellant Huber's excessive speed was unmistakably an appropriate jury issue. Appellant further asserts that his success in bringing his vehicle to a halt without colliding with defendant Johnson is conclusive that his speed was not excessive, arguing that negligent speed is submissible only where it is "likely to result in a collision".

*Bear v. Devore*, 177 S.W.2d 674, 676 (Mo. App.1944). The obvious answer is that two subsequent collisions in fact occurred, as the jury found, as a proximate result of appellant Huber's negligence. Appellant's success in avoiding a third collision with Johnson bears no relevance.

Next, appellant Greyhound challenges plaintiff's verdict-directing instruction on two grounds. First, Greyhound also challenges the submission of the issue of excessive speed, on the grounds that the bus was stopped at the time of impact. Appellant substantially overestimates a plaintiff's burden, which is to show only that defendant's excessive speed is "likely to result in a collision" and not that defendant engaged in excessive speed "at the time of impact". *See, Bear v. Devore, supra*, at 676.

Secondly, Greyhound argues that the court's alternative direction to find negligence if "defendant knew or by the highest degree of care could have known that there was a reasonable likelihood of collision" in time to have stopped or swerved to avoid it, was ambiguous and misleading to the jury because it failed to distinguish between the two collisions which occurred— the Greyhound-Huber collision and the Greyhound-Webb collision. While it is true no distinction between the collisions is made, any such distinction was made unnecessary by the immediately following requirement of the same instruction that the jury must also find that "as a result of such negligence Greyhound either directly caused or directly contributed to cause damage to the plaintiff". Under this instruction, the jury was allowed to find Greyhound liable if it could have avoided the first collision only if its failure to do so directly contributed to appellee's injuries.

The instruction was therefore fair to appellant in reference to either collision.[4]

Finally, appellant Greyhound asserts error in the district court's instruction on proximate cause, in that it does not include a statement that Greyhound cannot be found liable unless the evidence shows that appellee's damage would not have occurred "but for" some act or omission of Greyhound's.[5]

The district court instructed, *inter alia*, that "an injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case, that the act or omission was a direct cause in bringing about the injury or damage." While appellant's requested instruction might have provided some additional clarity, *see Floyd v. St. Louis Public Service Co., supra*, 280 S.W.2d 74, 78; *Caldwell v. St. Louis Public Service Co.*, 275 S.W.2d 288, 293 (Mo.1955); *Dickerson v. St. Louis Public Service Co., supra*, 286 S.W.2d 820 (Mo.1956), we believe that the court's instruction is a sufficient statement of Missouri law. Moreover, the court further instructed the jury that if it found Greyhound were negligent "but that such negligence was not a proximate cause of any injury or damage sustained by plaintiff", it must find for Greyhound. The jury was thus fully apprised of the necessary causal connection. We find no error.

Affirmed.

---

4. While we find the assertion of error without merit, we note additionally that appellant made no objection to the collision phraseology during the instruction conference, as required by Rule 51, F.R.Civ.P.

5. Greyhound's refused instruction read as follows:

An injury or damage is proximately caused by an act or a failure to act, whenever it appears from the evidence in the case, that the act or omission played a substantial part in bringing about or actually causing the injury or damage; and the injury or damage was a direct result of the act or omission and without which the injury or damage would not have resulted.