LOCKEWILL, INC., Appellee,

v.

The UNITED STATES SHOE CORP. and
Pappagallo, Inc., Appellants.

LOCKEWILL, INC., Cross-Appellant,

v.

ASSOCIATED DRY GOODS CORP.,
d/b/a Stix, Baer & Fuller, et al.,
Cross-Appellees.

Nos. 76–1099, 76–1025.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1976.

Decided Dec. 28, 1976.

Rehearing and Rehearing En Banc
Denied Jan. 21, 1977.

R. O. Klausmeyer, Cincinnati, Ohio, for appellants, U. S. Shoe Corp. and Pappagallo, Inc.; John C. Shepherd and Joseph A. Kral, III, St. Louis, Mo., on brief.

John J. Cole, St. Louis, Mo., for appellee and cross-appellant, Lockewill, Inc.; William J. Travis, St. Louis, Mo., on brief.

John C. Shepherd, St. Louis, Mo., and R. O. Klausmeyer, Cincinnati, Ohio, filed reply brief for appellants and for cross-appellee, Associated Dry Goods Corp., d/b/a Stix, Baer & Fuller.

Before LAY, ROSS and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This is an appeal and cross-appeal from a judgment of the United States District Court for the Eastern District of Missouri which was in one respect favorable to the plaintiff but which in other respects was favorable to the defendants. Jurisdiction of the district court was properly based on diversity of citizenship with the requisite amount in controversy. The case was tried to a jury. At the conclusion of plaintiff's case both sides moved for directed verdicts. The motion of plaintiff, Lockewill, Inc., was denied. The motion of the defendants, United States Shoe Corp. (U. S. Shoe) and Pappagallo, Inc. (Pappagallo), was likewise denied. The motion of the defendant, Associated Dry Goods Corp., Stix, Baer & Fuller Division, was granted. U. S. Shoe and Pappagallo called no witnesses and renewed their motion which was again denied.

Although the motions of U. S. Shoe and Pappagallo were denied, the district court refused to submit to the jury certain claims of the plaintiff and limited the jury's consideration to the claim of plaintiff that it was entitled to compensatory damages for breach of an alleged exclusive franchise or distributorship contract for the sale of fashionable women's shoes and other items of apparel and ornament from an establishment known as "The Shop for Pappagallo" located in or near the City of St. Louis, Missouri. The district court refused to submit to the jury plaintiff's claims for damages, including punitive damages, based on an alleged conspiracy among the defendants, including Stix, Baer & Fuller (SBF), alleged tortious interference by SBF with the contractual relationship between plaintiff and and the other defendants and alleged unfair competition.

On the limited submission to it, the jury found in favor of the plaintiff and assessed plaintiff's damages in the sum of $150,-000.00. Judgment was entered on the verdict. Thereafter, U. S. Shoe and Pappagallo filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. That motion was denied, and this appeal followed.

On their direct appeal U. S. Shoe and Pappagallo do not complain of the amount of the verdict. They do contend that their motions for a directed verdict should have been granted or that the district court should have granted their motion for judgment notwithstanding the verdict or should at least have granted a new trial.

On its cross-appeal plaintiff contends that the district court erred in directing a verdict in favor of SBF and in refusing to submit to the jury its other claims that have been mentioned.[1] Plaintiff also contends that the district court erred in excluding *in limine* certain evidence that plaintiff claims was relevant in connection with its claim of bad faith on the part of U. S. Shoe and its claim for punitive damages. And plaintiff finally contends that the district court erred in denying discovery with respect to certain documentary material.

The position of SBF is simply that the district court acted correctly when it direct-

---

1. One of plaintiff's claims that we have not mentioned was for injunctive relief. The district court did not submit that claim to the jury and did not grant that relief. The propriety of the district court's rulings in that regard is not questioned here.

ed a verdict in favor of SBF at the close of plaintiff's case.

Although the contract in suit was made in New York, and although the contract was to be performed partially in New York, both sides proceeded in the district court and have proceeded here on the theory that the rights of the parties are governed by the substantive law of Missouri. We will accept the parties' choice of law which certainly is not an impermissible one.

As far as the appeal of U. S. Shoe and Pappagallo is concerned, we are required to view the evidence in the light most favorable to the plaintiff and to give to the plaintiff the benefit of all inferences favorable to it that are reasonably deducible from the evidence. When that approach is taken, we think that the jury could have found from the evidence and evidently did find substantially the following facts:

As is well known, women's shoes and other items of merchandise designed and sold under the brand name "Pappagallo" have been fashionable and much in demand. Prior to 1968 this merchandise was manufactured or distributed at wholesale by Pappagallo, Inc., a New York corporation having its principal place of business in the City of New York. For a number of years all of the stock in the corporation was owned by its president, Maurice Bandler. In 1968 all of the stock in the corporation was acquired by U. S. Shoe, and thereafter Pappagallo, Inc. become a division of U. S. Shoe. However, it has retained its business identity. Mr. Bandler ceased to be connected with the operation in 1969. He was succeeded as president by Melvin Braverman; Mr. Braverman in turn was succeeded by Ben Ross; and Mr. Ross was finally succeeded by Frank Fleming who was still in charge of Pappagallo's operations when this suit was filed in 1974 and when it was tried in 1975.

Traditionally Pappagallo products have been sold to consumers at retail from relatively small stores, each of which is known as "The Shop for Pappagallo." These stores are uniquely and attractively designed, and in merchandising and advertising much stress is laid on the word "Pappagallo."

As long as Mr. Bandler owned the stock in Pappagallo and for some years after he sold his stock to U. S. Shoe, the retail outlets were separately owned and were non-competing; that is to say, there was only one Pappagallo shop in each city or trade area. And it was the policy of Pappagallo not to permit its products to be sold in large department stores like SBF.[2]

Plaintiff is a Missouri corporation which was organized in the spring of 1965 by Grant Williams, a man experienced in the shoe business, after he had made an oral contract with Mr. Bandler in March, 1965. After that contract was made, the rights and liabilities incident to it passed informally to the plaintiff corporation which Williams controls.

Williams first became interested in the Pappagallo operation when he observed a Pappagallo shop in Washington, D. C. while on a business visit to that city in late 1964 or early 1965. For the purpose of obtaining a Pappagallo franchise for the St. Louis area he met with Bandler in New York in March, 1965. As a result of that meeting, which was highly informal, Williams and Bandler entered into the contract involved in this case and under which Pappagallo and the corporate plaintiff performed for nearly nine years.

The agreement was that if Williams would at his own expense open and equip a Shop for Pappagallo in the St. Louis area, and if he would maintain it and operate it satisfactorily, and if he would purchase shoes in reasonable volume from year to year, he would be given an exclusive right to market Pappagallo products in that area and appropriately to make use of the Pappagallo trade name and good will. In the course of the conversation between Wil-

**2.** SBF is one of the largest department stores in St. Louis. Its principal store is located on Washington Avenue in downtown St. Louis, but it has a number of additional outlets in that city and in shopping centers in the suburbs.

liams and Bandler the former placed an initial order for several thousand pairs of shoes.

Unfortunately, the agreement between the two men was not reduced to writing. At one point in the conference Williams inquired of Bandler about the propriety of a written contract, but Bandler, although a lawyer, assured Williams that no writing was necessary, and that their handclasp was sufficient to bind the deal.

The agreement was silent as to its duration and nothing was said about the right of either side to terminate the arrangement either with or without notice or with or without cause. Moreover, it does not appear that either side covenanted to remain in business permanently or for any particular period of time.

After the conference in New York, Mr. Williams returned to St. Louis, formed his corporation, invested about $100,000.00 in the venture and opened for business in May, 1965. Thereafter and down through the years plaintiff bought and paid for large quantities of Pappagallo merchandise. Apparently, Pappagallo was satisfied with the performance of plaintiff, and plaintiff was satisfied with the performance of Pappagallo.

By about 1970 and after Bandler had ceased to be connected with Pappagallo, large department stores in various cities, including SBF in St. Louis, began to try to induce U. S. Shoe to permit the opening of Pappagallo shops in their stores. Naturally, the operators of existing outlets, including plaintiff, protested, contending that to permit the products to be sold by or in department stores would infringe upon their exclusive franchises and also would destroy the very marketing concept which had made the Pappagallo brand famous and dealings in merchandise bearing that brand profitable.

For a substantial period of time U. S. Shoe–Pappagallo refused to permit department stores to sell the merchandise in question in competition with locally owned Pappagallo shops. However, by the summer of 1973 an arrangement had been made under the terms of which SBF would be permitted to open Pappagallo shops in a number of its department stores in and around St. Louis.

In September, 1973 counsel for plaintiff wrote a joint letter to the president of SBF and to the president of Pappagallo warning them that the contemplated arrangement would violate the rights of plaintiff, and that should the arrangement be implemented, plaintiff would commence action to vindicate and preserve its alleged rights.

Pappagallo evidently had taken or took the position that plaintiff had no exclusive rights in the St. Louis area, or at least that Pappagallo knew of no such rights. However, in view of the letter from plaintiff's counsel, SBF refused to proceed further unless the other defendants provided it with satisfactory indemnity should it turn out that the plaintiff was correct in its position.

SBF was provided with a satisfactory indemnity agreement, and in February, 1974 SBF opened a number of Shops for Pappagallo in its stores in and around St. Louis, and this suit was promptly filed.

The SBF shops began to sell goods in direct competition with plaintiff, and the jury was justified in finding that plaintiff sustained substantial losses in sales and profits from the SBF competition. Under the instructions of the district court, the jury's award was based on lost profits, including future profits.

As far as the record shows, plaintiff has never ceased to operate its Shop for Pappagallo at the same location and under the same name, nor has it ever ceased to sell Pappagallo products. Plaintiff is not suing U. S. Shoe and Pappagallo for any breach of that portion of the contract which involved sales of goods by those defendants to plaintiffs. The position of the plaintiff is that when U. S. Shoe and Pappagallo permitted SBF to open Shops for Pappagallo in its stores, those defendants breached the exclusivity provision of plaintiff's distributorship contract.

The position of the defendants is that for a number of reasons the agreement be-

## 1028

tween Williams and Bandler was never enforceable prospectively, and that plaintiff is not entitled to recover anything on the basis of that contract or a breach thereof.

■ Contracts for exclusive franchises or distributorships have been developed to meet the needs of modern manufacturing and distribution. *Bendix Home Appliances, Inc. v. Radio Accessories Co.,* 129 F.2d 177, 181 (8th Cir. 1942). They are discussed in considerable detail in Williston on Contracts, 3d ed., § 1017A.[3] In one aspect, such a contract is one for the future sale of goods; in another aspect, it is a contract of agency or factorage. In view of the dual nature of such a contract it is not necessary for its validity that it require the franchisee or distributor to buy any particular quantities of goods; he is expected to order what he needs and can sell. Williston, *op. cit.,* pp. 139–40; *C. C. Hauff Hardware, Inc. v. Long Mfg. Co.,* 257 Iowa 1127, 136 N.W.2d 276 (1965); *Bendix Home Appliances, Inc. v. Radio Accessories Co., supra.*

Suits by franchisees against franchisors alleging wrongful terminations or cancellations of franchises are by no means rare and have produced a great number of reported decisions, many of which are collected in an exhaustive annotation entitled "Termination By Principal of Distributorship Contract Containing No Express Provision For Termination," 19 A.L.R.3d 196, and the protection of franchisees from improper terminations by franchisors is the specific problem discussed in § 1017A of Williston.

As might be expected, the results reached by the courts have not been harmonious. Results have been influenced by underlying concepts of contract law, by characterizations of particular contracts in suit, by the provisions, if any, of the contracts with regard to termination, and the facts and circumstances of particular cases. In some cases legal or equitable relief, or both, has been granted; in other cases relief has been denied.

As the annotation cited above makes clear, relief has been denied in some cases on the theory that the contracts before the court were terminable at will from their inception, that the promises, if any, of the distributors were illusory, and that the manufacturers or franchisors were for that reason not required to perform prospectively. In other cases the view has been taken that the contracts although valid initially were terminable at will by the distributor or by the manufacturer, or by either, and that the manufacturer could exercise his right without incurring liability to the distributor.

In *Williston, supra,* it is said that the problem may present itself to a court in any one of five conventional situations: (1) where the duration of the contract is fixed; (2) where a determinable time is fixed on one side only; (3) where the contract is completely silent as to termination; (4) where the contract is definite as to duration but reserves to one side a right of prior cancellation; and (5) where the contract fixes no definite period of duration but specifies that one or both parties may cancel at will or upon notice, or upon written notice, or for designated cause, or for dissatisfaction.

We have here the third situation, and the view expressed in Williston is that the contract is binding on the manufacturer for a reasonable period of time after which it may be cancelled upon notice. The purpose of the notice is to allow the distributor a reasonable opportunity to arrange his affairs. Williston, *op. cit.,* pp. 150–52, and cases cited. *See also C. C. Hauff Hardware, Inc. v. Long Mfg. Co., supra; Ag-Chem Equipment Co. v. Hahn, Inc.,* 480 F.2d 482 (8th Cir. 1973) (applying Minnesota law).

■ The law of Missouri, which we are undertaking to apply in this case, appears to be that where the parties to a franchise or exclusive agency or distributorship agreement which is silent as to duration and which does not deal specifically with termination begin to perform thereunder, the agreement is construed to be terminable

---

**3.** In an earlier edition of Williston that section appeared as § 1027A.

at the will of either party. *See Superior Concrete Accessories v. Kemper*, 284 S.W.2d 482 (Mo.1955); *Want v. Century Supply Co.*, 508 S.W.2d 515 (Mo.App.1974); *Red-E-Gas Co. v. Meadows*, 360 S.W.2d 236 (Mo.App. 1862); *Beebe v. Columbia Axle Co.*, 233 Mo.App. 212, 117 S.W.2d 624 (1938).

That general rule, however, is subject to an important limitation which was expressed in *Beebe, supra*, in the following language (117 S.W.2d at 629):

The limitation is that, in any case of an indefinite agency where it is revoked by the principal, if it appears that the agent, induced by his appointment, has in good faith incurred expense and devoted time and labor in the matter of the agency without having had a sufficient opportunity to recoup such from the undertaking, the principal will be required to compensate him in that behalf; for the law will not permit one thus to deprive another of value without awarding just compensation. The just principle acted upon by the courts in the circumstances suggested requires no more than that, in every instance, the agent shall be afforded a reasonable opportunity to avail himself of the primary expenditures and efforts put forth to the end of executing the authority conferred upon him and that, if such opportunity is denied him, the principal shall compensate him accordingly. (Citations omitted.)

In a case to which the limitation of the general rule is applicable, the agent is entitled to recoupment or to compensation on a quantum meruit basis rather than by way of ordinary damages for breach of contract. *Gibbs v. Bardahl Oil Co.*, 331 S.W.2d 614 (Mo.1960); *Glover v. Henderson*, 120 Mo. 367, 25 S.W. 175 (1894); *Want v. Century Supply Co., supra*, 508 S.W.2d at 516–17.

In *Superior Concrete Accessories, Inc. v. Kemper, supra*, the parties entered into their contract in 1941, and it provided that it should continue in effect until cancelled by mutual agreement. The parties performed under the contract for a number of years after which the manufacturer brought suit for a declaratory judgment to

the effect that it was entitled to cancel the agreement at will. The manufacturer prevailed in the trial court, and the franchisee appealed.

For reversal, the franchisee contended primarily that the contract was of perpetual duration. Alternatively, it was contended that the agreement should be held binding for a reasonable period of time so that the franchisee could recover its investment. Both contentions were rejected.

In dealing with the franchisee's alternative contention, the court first recognized the limitation on the rule that a contract of indefinite duration is terminable at the will of either party. The court thereafter said (284 S.W.2d at 492):

In view of the return to Kemper under the agreement shown by the record, and the fact that this agreement had been in effect for more than twelve years at the time of the trial of this case, we are of the opinion that the trial court correctly found that Kemper has had a reasonable and ample opportunity to recover the amounts invested by him pursuant to the agreement in the promotion of the business of respondent.

■ Applying to this case the principles of Missouri law that have been mentioned, we hold that apart from any question of the statute of frauds, which was pleaded by the defendants, the agreement between plaintiff and Pappagallo was binding, at least quasi-contractually, on Pappagallo and later on U. S. Shoe for a reasonable time after plaintiff had opened its shop in May, 1965, to the end that plaintiff might have a reasonable opportunity to recover its initial investment and expenses. During that period of time Pappagallo and U. S. Shoe were required to supply goods to the plaintiff and to refrain from interfering with his exclusive distributorship in the St. Louis area.

However, we are convinced that reasonable men could not differ on the proposition that by late 1973 and early 1974 such a reasonable time or period had expired, and that U. S. Shoe and Pappagallo had the right to terminate their contractual rela-

tions with plaintiff entirely, which they did not do, or to cancel the exclusivity feature of plaintiff's distributorship, which they did do when they permitted SBF to open Shops for Pappagallo in its stores.

And, we are convinced that plaintiff suffered no legal wrong when U. S. Shoe and Pappagallo finally implemented a change in marketing policy which had evidently been in contemplation for some years.

It is true that plaintiff was not given any formal or written notice of what the defendants intended to do. However, it is evident that at least by late September, 1973 plaintiff had received actual notice of what was in the wind, and there is nothing to indicate that plaintiff sustained any loss or damage by the fact that it was not given formal notice. It will be remembered that the contract said nothing about termination and naturally there was no requirement of formal notice of cancellation.

It follows that the district court erred in submitting to the jury the claim of plaintiff based on breach of contract. It should have directed a verdict in favor of U. S. Shoe and Pappagallo on all of the claims of the plaintiff and should have entered judgment in favor of those defendants on all of the claims.

Plaintiff's cross-appeal may be disposed of briefly. We are satisfied that plaintiff did not make a submissible case against SBF on plaintiff's claims of conspiracy, tortious interference with contract relations, and unfair competition, and that the district court properly directed a verdict for and entered judgment in favor of SBF.

Other issues raised by the cross-appeal do not survive our determination of the principal appeal and our holding that a verdict in favor of SBF was properly directed.

As far as U. S. Shoe and Pappagallo are concerned, the judgment of the district court is reversed and the cause remanded for further proceedings not inconsistent with this opinion. The judgment of the district court in favor of SBF is affirmed.

Reversed and remanded on direct appeal. Affirmed on cross-appeal.