**BERRYFAST, INC., a California corporation, Appellant,**

v.

**Seymour ZEINFELD and Shirley Zeinfeld, Appellees.**

**Steel Fastener Company, Inc., Appellee.**

**No. 82–2259.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1983.

Decided Aug. 17, 1983.

William H. Pickett, Robert J. Perkins, William H. Pickett, P.C., Kansas City, Mo., for appellant.

Michael R. Roser, Alan B. Gallas, Berman, DeLeve, Kuchan & Chapman, Kansas City, Mo., for appellees.

Before HEANEY, Circuit Judge, and FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

Appellant Berryfast, Inc. contests certain aspects of the judgment entered by the district court [1] in this diversity action. Specifically, it contends the court erred (1) in

1. The Honorable Joseph E. Stevens, Jr., United States District Judge, Eastern and Western Dis-    tricts of Missouri.

finding that two officers of defendant Steel Fastener Company, Inc. were not personally liable on two promissory notes; and (2) in entering judgment for Steel Fastener on its counterclaim for wrongful termination of an exclusive distributorship agreement between the parties. We affirm.

## I. Background.

This litigation is the result of a business arrangement gone sour. During the 1970's Steel Fastener, a Missouri corporation engaged in the distribution and sale of nailers, staplers and related items, purchased pneumatic tools and fasteners from Berryfast, a California manufacturer. Beginning in early 1973 Steel Fastener allegedly became the exclusive distributor for Berryfast's products in and around Kansas City, and proceeded to develop a market for the products in that area.

Nearly all Steel Fastener's purchases of Berryfast's products were made on open account. On two occasions in late 1975 and early 1976, however, when Berryfast agreed to finance the distributor's purchases of certain tools to be used for loans to customers, it required the execution of promissory notes by Steel Fastener. Each of the notes obligated both the distributor and Seymour Zeinfeld, its owner and president. Consequently, Zeinfeld signed each instrument twice, both as "president" of Steel Fastener and as "an individual." Each of the notes was subsequently paid.

In March of 1978 Berryfast requested that Steel Fastener execute a promissory note for the amount then unpaid on its account; this note was apparently necessary to satisfy the manufacturer's creditors. Berryfast prepared a note dated March 29, in the amount of $15,675.00. The instrument included an annual interest rate of 9%, and specified that payment was to be completed in six monthly installments. During this period, Berryfast also asked that a note be executed to secure payment for purchases shipped to Steel Fastener on April 1, 1978. This instrument, in the

amount of $17,169.99, was to be paid in sixty days. No interest was charged. Thereafter, the notes were mailed to Seymour Zeinfeld, to be executed by him and his wife, who served as secretary-treasurer of Steel Fastener. Both notes were executed in the following manner:

STEEL FASTENER CO.,

/s/_____

Seymour Zeinfeld

/s/_____

Shirley R. Zeinfeld

While Berryfast intended that these notes personally bind the Zeinfelds, they apparently believed the signatures were made only in their capacities as representatives of Steel Fastener, and not as co-makers.

At the beginning of May, 1978, Steel Fastener's leading salesman of Berryfast products resigned to establish a competing business in Kansas City, Midwest Staple & Nail, Inc. Without notifying Steel Fastener, Berryfast began selling its products to the new company in mid-May.

In the meantime, Steel Fastener, which had made a total of three payments on the promissory notes, continued to make other purchases from Berryfast on open account. Within a short time, however, the manufacturer imposed three-for-one cash-on-delivery terms for all new Steel Fastener purchases.[2] Unable to afford these terms, Steel Fastener's purchases began to diminish, and ultimately ceased in June of 1980. No further payments were made on either of the promissory notes.

Berryfast initiated the present action in October of 1978, seeking judgment against Steel Fastener, Seymour Zeinfeld and Shirley Zeinfeld on the two promissory notes. The defendants denied liability, and Steel Fastener filed a counterclaim, seeking damages for Berryfast's alleged wrongful ter-

2. Under these purchasing terms, three dollars were required to be paid on Steel Fastener's outstanding account balance for every dollar of new merchandise purchased.

mination of Steel Fastener's exclusive distributorship.

Following trial without a jury, the district court concluded that Steel Fastener was liable for the unpaid balance and accrued interest on the promissory notes in the amount of $26,880.79. It found, however, that the Zeinfelds had executed the notes in their capacities as representatives of the company, and that they therefore could not be held personally liable. In addition, the court found that an exclusive distributorship existed between the parties, and that Steel Fastener was entitled to compensation as a result of Berryfast's failure to afford it a reasonable period in which to recoup its ongoing expenses. Accordingly, the court entered judgment for Steel Fastener on its counterclaim in the amount of $26,979.00. This appeal followed.

## II. Personal liability of the Zeinfelds.

In its initial assignment of error, Berryfast challenges the district court's finding that the Zeinfelds were not personally obligated under either of the promissory notes. Essentially, the company argues that insufficient evidence was presented to demonstrate that the Zeinfelds signed the instruments only as representatives of Steel Fastener, and not as individual comakers.[3]

Factual findings of the district court may not be set aside on appeal unless clearly erroneous. Fed.R.Civ.P. 52(a); *see, e.g., Blair International, Ltd. v. LaBarge, Inc.,* 675 F.2d 954, 957–58 (8th Cir.1982). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). In addition, we give great deference to the district court's determination of state law, which is applicable in this diversity action. *See, e.g., Ancom, Inc. v. E.R. Squibb & Sons, Inc.,* 658 F.2d 650, 654 (8th Cir.1981).

■ Because the signatures on the promissory notes in question failed to indicate the capacity in which the Zeinfelds had signed, an ambiguity existed, and parol evidence was properly admitted "to prove signature by the agent[s] in [their] representative capacit[ies]." Mo.Ann.Stat. § 400.3–403 comment 3 (Vernon 1965); *First Security Bank v. Fastwich, Inc.,* 612 S.W.2d 799, 805 (Mo.App.1981); *see Fricke v. Belz,* 237 Mo.App. 861, 177 S.W.2d 702, 706–07 (1944). In the present case, the evidence submitted at trial supports the district court's finding that the Zeinfelds signed the notes only as representatives of Steel Fastener, and that they therefore were not personally bound. Although a Berryfast official testified that the promissory notes were intended to obligate the Zeinfelds as well as Steel Fastener, Seymour Zeinfeld stated there was no request that he and his wife assume personal liability on the instruments. As the district court observed, the additional evidence presented supports the Zeinfelds' position. For example, the 1978 promissory notes were drafted for signature differently than those executed in 1975 and 1976, which the parties agree were personally binding upon Seymour Zeinfeld. The earlier notes required Zeinfeld's signature twice, once as president of Steel Fastener and again as an individual. In contrast, the notes now in dispute made no such provision. Additionally, payments on the notes were made only by Steel Fastener, and Berryfast continued to allow the company to make purchases on open account after the instruments were executed, a practice which weakens Berryfast's claim that the Zeinfelds were to assume personal responsibility for Steel Fastener's obligations. Further, any doubts concerning the signatures were properly resolved against Berryfast as the party whose drafting resulted in the ambiguity. *See, e.g., Bradley v. Buffington,* 500 S.W.2d 314, 319 (Mo.App.1973). In short, the findings of the district court on this issue are sup-

---

**3.** As indicated, although finding that the Zeinfelds were not personally liable under the promissory notes, the district court did conclude that Steel Fastener itself was obligated. This conclusion is not challenged on appeal.

ported by the evidence, and are not clearly erroneous.[4]

### III. Termination of the distributorship arrangement.

Berryfast also questions the district court's entry of judgment in favor of Steel Fastener on its counterclaim, which sought compensation for expenses the distributor was unable to recoup when the parties' alleged distributorship arrangement was effectively terminated without notice. Finding that an oral agreement existed between the parties, and that Berryfast had terminated the arrangement without affording Steel Fastener a reasonable opportunity to recoup expenditures incurred in the promotion and sale of Berryfast products, the court concluded Berryfast was required to compensate Steel Fastener for those expenses which could have been recovered had the distributor been given termination notice of ninety days, a period the court determined would have been reasonable in the circumstances presented.

■ Under Missouri law, an agency or distributorship agreement which is silent as to duration and includes no provisions for termination may be terminated at will by either party. *See, e.g., Superior Concrete Accessories, Inc. v. Kemper,* 284 S.W.2d 482, 490 (Mo.1955); *see also Lockewill, Inc. v. United States Shoe Corp.,* 547 F.2d 1024, 1028–29 (8th Cir.1976), *cert. denied,* 431 U.S. 956, 97 S.Ct. 2678, 53 L.Ed.2d 272 (1977). This general rule, however, is subject to the following limitation:

> [I]f it appears that the agent, induced by his appointment, has in good faith incurred expense and devoted time and labor in the matter of the agency without having had a sufficient opportunity to recoup such from the undertaking, the principal will be required to compensate him in that behalf; for the law will not permit one thus to deprive another of value without awarding just compensation.

*Beebe v. Columbia Axle Co.,* 233 Mo.App. 212, 117 S.W.2d 624, 629 (1938); *see Lockewill,* 547 F.2d at 1029; *see also Ag-Chem Equipment Co. v. Hahn, Inc.,* 480 F.2d 482, 486 (8th Cir.1973) (applying Minnesota law).

■ In the instant case, we cannot say the district court's findings that a distributorship agreement existed between Berryfast and Steel Fastener, and that Berryfast effectively terminated this arrangement without affording reasonable notice, were clearly erroneous. Further, although we are somewhat troubled by Berryfast's argument that the doctrine of recoupment allows recovery of only initial, and not ongoing, expenses, we note that this contention was first presented during oral argument. Berryfast's appellate brief does not discuss the issue, nor is there any indication it was presented to the district court. Issues not raised in the trial court will generally not be considered on appeal, *see, e.g., Morrow v. Greyhound Lines, Inc.,* 541 F.2d 713, 714 (8th Cir.1976), and we are unable to say the alleged error here constitutes a "plain miscarriage of justice." *Id.* Consequently, we decline to disturb the judgment against Berryfast on the counterclaim.[5]

### IV. Conclusion.

Our review satisfies us that neither of the assignments of error raised by Berryfast

---

**4.** Berryfast also contends the district court erred in awarding attorney's fees pursuant to the terms of the promissory notes, which obligated the maker to pay "such additional sum as attorney's fees as the court may adjudge reasonable" in the event litigation was necessary for collection. The company requested fees in the amount of $8,096.25, but was awarded $2,700.00. In limiting the award, the court reasoned that because Berryfast had secured judgment against only one of the three named defendants, Steel Fastener, and because no more than a third of the requested fees could

be attributed to the successful prosecution of that claim, a $2,700.00 award was reasonable. We do not believe the district court abused its discretion in making this award, and we therefore decline to disturb it.

**5.** Berryfast apparently does not contest the amount the district court required it to pay in connection with the counterclaim, nor does it challenge the reasonableness of the ninety-day notice period used by the court to calculate this sum.

merits relief. Accordingly, the judgment of the district court is affirmed.