**McGINNIS PIANO AND ORGAN COMPANY, Appellee,**

v.

**YAMAHA INTERNATIONAL CORPORATION, Appellant.**

No. 71–1205.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1972.

Decided March 6, 1973.

14. The amount of the distribution is the fair market value of the property received. Section 301(b)(1).

Richard D. Allen, Minneapolis, Minn., for appellant.

Craig A. Beck, Minneapolis, Minn., for appellee.

Before GIBSON, HEANEY and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

The Yamaha International Corporation appeals from a judgment for $67,224.50 in favor of the McGinnis Piano and Organ Company. The award was based on a jury verdict that Yamaha had breached an implied franchise agreement with McGinnis by terminating the franchise. Yamaha contends on appeal that:

(1) the trial court erroneously instructed the jury on the issues of liability and damages;

(2) the trial court erred in denying Yamaha's motion for a directed verdict and its alternative motions for a judgment notwithstanding the verdict or a new trial;

(3) the evidence was insufficient to support the verdict;

(4) the trial court erred in the admission and exclusion of evidence; and

(5) the verdict was excessive and contrary to law.

Appropriate motions were made by Yamaha at and after trial to preserve these issues for appeal.

We hold that the trial court erroneously instructed the jury as to liability and damages, that it did not err in denying Yamaha's motion for a directed verdict or for a judgment notwithstanding the verdict. We do not decide the remaining issues.

A brief outline of the largely undisputed facts will assist in understanding the issues.

McGinnis and its predecessor have been in the business of selling pianos and organs in Minneapolis since 1916. In 1963, it was approached by a Yamaha representative and asked to become the Yamaha dealer for the Twin Cities. McGinnis agreed to place an initial order. That order was followed by others. McGinnis was given a certificate as a Yamaha dealer soon after the first order arrived. McGinnis followed Yamaha's advice to concentrate on quality sales to schools, churches and other institutions, and participated in promotional efforts to increase such sales. It also participated in the Yamaha Service Bond Program, an after-sale warranty service. McGinnis participated in Yamaha dealer meetings, restricted sales to the trade territory assigned to it and undertook, at some expense, to develop the Yamaha music course for children. McGinnis also floor-planned its inventory through Yamaha, and reached a point where it handled Yamaha pianos exclusively.

Millard McGinnis, the president of McGinnis, devoted all his time and energies to the business. The company paid Millard McGinnis $150.00 per week in

salary. Earnings were left in the company.

Yamaha piano sales, during the time McGinnis served as a dealer, were as follows:

1964— 4
1965—31
1966—47
1967—58
1968—71
1969—74 (Partial)

No written franchise agreement was ever signed by the parties.

On July 16, 1969, Yamaha told McGinnis that it was being terminated as a dealer, and that a new dealer—a competitor—had been appointed to take its place. Yamaha offered to repurchase from McGinnis the Yamaha inventory. McGinnis declined to sell. Yamaha then agreed to sell pianos to McGinnis until September 1, 1969. Yamaha kept that commitment, but refused to make additional shipments after the specified date. McGinnis then commenced this action.

## THE COURT'S INSTRUCTIONS AS TO LIABILITY

We think it clear that McGinnis presented sufficient evidence to justify an instruction permitting the jury to find that McGinnis and Yamaha had entered into a valid implied agreement under which McGinnis was recognized as a franchised dealer of Yamaha pianos. Moreover, the instructions given by the court, with respect to the elements necessary to establish such an agreement, were proper. No question with respect to their propriety is raised on this appeal.

We also think it is clear that McGinnis presented sufficient evidence to justify the jury in finding, under proper instructions, that McGinnis had made substantial investments in reliance on the franchise agreement, that a reasonable duration of the agreement could be implied, and that a reasonable notice to terminate the agreement was necessary.[1]

What is questioned is the propriety of the rather long and complex instructions in regard to the duration of the implied agreement, and the closely related instructions with respect to notice required to terminate the agreement.[2] We understand the instructions to have permitted the jury to make one of two alternative findings with respect to the duration.

1. The rule in Minnesota is that contracts will be construed, wherever possible, so as not to permit their termination at will. Miller v. O. B. McClintock Co., 210 Minn. 152, 297 N.W. 724 (1941).

2. The court's instructions stated:
"It is the position of the plaintiff that the contract was to continue for a period of time to an unspecified date in the foreseeable future for so long as McGinnis satisfactorily performed its part of the contract, and, thus, if that is the case, I advise you that the contract could be cancelled only for good cause.
* * *
"If you find there was a contract between the plaintiff and the defendant, if you find that the provisions of said contract provided that the contract was terminable by either party at any time upon reasonable notice to the other, and that the contract was terminated and that the termination was done with reasonable notice, then in that event you are hereby instructed by the Court that you must find that the plaintiff did not suffer * * * any damage at all.
* * *
"On the other hand [if the contract was terminated] without reasonable notice then the damages which the plaintiff may recover are those damages which represent his losses during the time which you find would have been a reasonable time of notice. * * *
"What is reasonable notice? Reasonable notice is that notice which under all the circumstances of the case you, as jurors, would regard as a fair and reasonable advance period of notice to sever the kind of relationship which these parties had. You must determine what was the reasonable period of time that the plaintiff should have been given, if any, in order for the plaintiff not to have suffered substantial damage as a result of severing this relationship. * * * In determining the period of time which constitutes reasonable notice, you may further consider all of the circumstances such as the investment made in this business, focused in or zeroed in on Yamaha pianos, if you find

(1) It could find that the agreement was terminable by either party at will upon reasonable notice to the other. Reasonableness was defined as that notice which, under all of the circumstances of the case, would be regarded as a fair and reasonable advance period of notice to sever the relationship between the parties or, alternatively, the time needed by McGinnis to put its house in order to take steps to protect itself as it transferred its business from one line to another—the time necessary for McGinnis to recoup its investment. The jury was further instructed that in determining reasonableness, it could consider the profits which might be projected in the future, the availability of other lines of instruments, and the time and effort necessary to acquire a new line of pianos and organs.

(2) It could find that the agreement was for a longer period—"an unspecified period of time in the foreseeable future," "for some reasonable time into the future," or for as long as McGinnis satisfactorily performed as a Yamaha dealer.

The jury was instructed that under either alternative, the agreement could be terminated for good cause at any time by Yamaha without notice.

that to be the case. Was this investment put in reliance on the arrangement with Yamaha? You may consider the loss which resulted to that investment because of the cancellation. I am now talking about the unrecoupable loss. You may also take into account the profits or the lack of profits in the past and the profits that might be projected in the future as relates to his activities; that is, profits which to a reasonable certainty you could project. * * *

"You may consider the availability of other lines of instruments, the options open to the McGinnis Company after termination, the time and effort required to establish a new line of pianos and organs in its store. * * * [Then followed an explanation of unrecouped investment.]

* * * * * *

"Your answer to the question of whether or not reasonable notice was given will be reflected ultimately in the dollar amount of your verdict, if your verdict is for the plaintiff.

"Now, if on the other hand, you find there was a contract between the plaintiff and the defendant for an unspecified period of time into the foreseeable future, unless terminated for good cause —this is the longer contract now; within the evidence you have the option of finding either a contract at will, which requires reasonable notice, or a longer one—I use this language—for an unspecified period of time into the foreseeable future unless terminated for good cause—that means, that based on evidence, depending on what you decide, you may decide there was something more than a contract terminable at will and that it runs for some reasonable time into the future. And again 'reasonable' is the catchword.

"There is a certain similarity between the two approaches. Where there is no definite time for the contract to run and it is terminable at will, a reasonable time in the future for cancellation is implied. Many of the exact same considerations which apply to that theory apply to the theory that it is running for some indefinite time in the foreseeable future. Some of the same principles apply. What is reasonable? How much reliance was on it? What was the consideration? What would be the damage on termination? But assume you find that the contract was to run for an unspecified period of time into the foreseeable future unless terminated for good cause, and you find it was terminated without good cause, then you may award damages for breach of contract to Mr. McGinnis' Company as I shall hereinafter instruct you.

"Again, I repeat, if you find there was a contract that was to run into the foreseeable future but that Yamaha had good cause for terminating it, then your verdict will be for the defendant. * * *

"What is good cause? Good cause may mean a breach by the plaintiff of their agreement. * * * Good cause generally would mean that the plaintiff was acting or refusing to act in such a manner that Yamaha would not get the benefit of its bargain. How much benefit Yamaha could expect and whether Yamaha was being deprived of it is for you to determine. Whether the defendant had good cause for terminating the contract is for you to determine in the light of all of the circumstances of this case. * * *"

■ In our view, the instructions were contrary to Minnesota law. We understand the rule in Minnesota to be that franchise agreements which do not contain provisions for duration or termination are ordinarily terminable by either party at will upon reasonable notice to the other.[3] Reasonable notice is that period of time necessary to close out the franchise and minimize losses.

■■ We further understand Minnesota law to permit a reasonable duration to be implied in franchise agreements where a dealer has made substantial investments in reliance on the agreement. Reasonableness in such situations is measured by the length of time reasonably necessary for a dealer to recoup its investment. A reasonable notice period prior to termination is also required.[4] As we stated in Clausen & Sons, Inc. v. Theo. Hamm Brewing Co., 395 F.2d 388, 391 (8th Cir. 1968):

> " * * * [U]nder Minnesota law where an exclusive franchise dealer under an implied contract, terminable on notice, has at the instance of a manufacturer or supplier invested his resources and credit in establishment of a costly distribution facility for the supplier's product, and the supplier thereafter unreasonably terminates the contract and dealership without giving the dealer an opportunity to recoup his investment, a claim may be stated. See also 6 Corbin on Contracts, § 1266 l. c. 57–59; Gellhorn, Limitations on Contract Termination Rights—Franchise Cancellations, 57 Duke L.J. 465 (1967). * * *".

In our view, the instructions given by the trial court did not follow Minnesota law in that:

(1) They did not permit the jury to find that the franchise agreement was terminable at will, subject only to reasonable notice—*i. e.*, notice sufficient to permit McGinnis to close out the franchise and minimize his losses.

(2) They permitted the jury to find that the agreement could continue for as long as McGinnis performed satisfactorily.

■■ We are convinced there was no oral understanding between the parties that McGinnis could continue to serve as a Yamaha dealer as long as it performed satisfactorily. Compare, Benson Coop. Creamery Ass'n v. First District Ass'n, 276 Minn. 520, 151 N.W.2d 422, 426 (1967).[5] The president of McGinnis conceded that such was the case on cross-examination. We are also convinced that no such agreement can be implied from the circumstances. McGinnis apparently concedes this to be the case by arguing in its appellate brief

---

3. Benson Coop. Creamery Ass'n v. First District Ass'n, 276 Minn. 520, 151 N.W.2d 422 (1967); Victor Talking Mach. Co. v. Lucker, 128 Minn. 171, 150 N.W. 790 (1915); Hoover v. Perkins Windmill & Axe Co., 41 Minn. 143, 42 N.W. 866 (1889).

4. See, 53 Minn.L.Rev. 1146, 1148 (1969). See also, Allied Equipment Co. v. Weber Engineered Products, 237 F.2d 879 (4th Cir. 1956); J. C. Millett Co. v. Park & Tilford Distillers Corp., 123 F.Supp. 484 (N.D.Cal.1954); San Francisco Brewing Corp. v. Bowman, 52 Cal.2d 607, 613–614, 343 P.2d 1, 4 (1959); 9 Williston on Contracts § 1017A at 150–151 (3rd ed. 1967).

5. In *Benson*, the trial court granted a summary judgment for the defendant on the ground that an agreement to pick up milk from plaintiff was not for any particular length of time and could be terminated by either party without cause at any time. The Minnesota Supreme Court reversed on the ground that depositions of members of the defendant's board of directors created a fact issue with respect to the duration of the agreement. The directors had stated, in substance, that the defendant was obligated to pick up the plaintiff's milk as long as the plaintiff remained a member of the defendant Association. The court stated:

> " * * * [I]f the evidence sustains a binding agreement that the Association would continue to pick up [plaintiff's] milk, of the required quality, so long as it remained a member of the Association, then [plaintiff] would be entitled to recover its damages, whatever they might be, for breach of that contract."

Benson Coop. Creamery Ass'n v. First Distrist Ass'n, *supra* at 427.

that the court's instructions, when read as a whole, limited the duration of the agreement to "a reasonable period, sufficient to allow the dealer a fair opportunity to recoup its investment." We cannot agree. Our reading of the instructions leaves us with the clear impression that the jury could properly find that the agreement was intended by the parties to continue for as long as McGinnis performed satisfactorily. This was error.

(3) They permitted the jury to find that the agreement could continue for a period sufficient to permit McGinnis to recoup its investment, plus an additional period to realize reasonable future profits. This, too, was error. Had this portion of the instruction been silent as to the future profits, it would have been proper. But, we find no Minnesota law which extends the period of reasonable duration beyond that period necessary to permit the dealer to recoup its investment, plus a period of reasonable notice.

■ We agree with the trial court that the jury should have been given alternatives with respect to the duration of the agreement, but the alternatives should have been limited to: (1) an agreement terminable at will upon reasonable notice, with reasonableness being defined as that period of time necessary to close out the dealership, and (2) an agreement for that period of time reasonably necessary for McGinnis to recoup its investment, plus a reasonable notice prior to termination.

Yamaha argues that the Uniform Commercial Code adopted by the Minnesota Legislature in 1965 is applicable to the transaction, and that the termination is governed by the provisions of Minn.Stat.Ann. § 336.2-309. We agree and point out that the results reached by us are consistent with the Code.

"Section 2-309(2) codifies the widely held view that a distributorship agreement which has an indefinite duration is terminable at will, but subsection (3) requires reasonable notification of termination, and 'an agreement dispensing with notification is invalid if its operation would be unconscionable!' Section 2-309(2) direct that a contract of indefinite duration which provides for successive performances is 'valid for a reasonable time.'

"When the sale of goods is the primary facet of the franchise relationship, 2-309(2) and (3) would seem to apply directly to the agreement, and concurrently may apply to franchise rights, because they will often be coterminous with the right to buy the franchisor's goods. Where the franchisor only licenses a trademark or provides a system of business, these provisions should be employed analogically because they are rational rules especially adaptable to the realities of franchising." (Footnotes omitted.)

Note, Article Two of the Uniform Commercial Code and Franchise Distribution Agreements, 1969 Duke L.J. 959, 996-997.

■ We disagree, however, with Yamaha's contention that six years constituted a reasonable time, as a matter of law, for McGinnis to have recouped its investment. The evidence with respect to the difficulty in building sales in early years, the losses during those early years, and the investment by McGinnis in time and money in building the franchise was sufficient to require that the question of reasonable duration be submitted to the jury. See, E. Gellhorn, Limitations on Contract Termination Rights—Franchise Cancellations, 1967 Duke L.J. 465, 478-483.

■ McGinnis argues that even if the instructions were erroneous, Yamaha was not prejudiced. We cannot agree. Under the court's instructions, once the jury found that there was an implied agreement, it had to find that the duration of the agreement was at least for a period sufficient to permit McGinnis to recoup its investment and reasonable future profits or, alternatively, for as long as McGinnis performed satisfactorily. And, neither alternative was proper under Minnesota law for the reasons previously given.

The jury might have awarded a comparable verdict under proper instructions, but it is not for us to speculate that such would have been the case.

## THE COURT'S INSTRUCTIONS AS TO DAMAGES

[redacted] The trial court's instructions as to damages were interspersed with its instructions as to liability and were consistent with those instructions. Thus, what we have said with respect to errors in the instructions as to liability is applicable with respect to the instructions as to damages and need not be repeated. There is one phase of the instructions, however, that deserve additional comment.

The Court instructed the jury as follows:

> "If the defendant breached and violated the contracts with the plaintiffs, then the plaintiff is entitled to recover those damages from such breach and violation of the contract which are the direct and natural and the word 'proximate,' or probable expected consequence of such breach, or which may reasonably be supposed to have been contemplated by the parties or reasonable men in the position of the parties as a result of the breach. * * * [F]*uture profits, if proven to a reasonable certainty*, may be included as part of the damages, * * *.
>
> "To summarize, in determining damages * * * you may consider generally the extent to which Mr. McGinnis and his company focused its business activities on building up Yamaha products in reliance on the contract with Yamaha, if there was one; you may consider the extent to which the plaintiff was damaged by the cancelation without cause if you have found it to be a contract to run into the foreseeable future, or by the failure to give reasonable notice if it is found to be a contract terminable at will. If those elements do not exist, of course, you find for the defendant, Yamaha Corporation.

[redacted]

> *"Now, evidence has been offered that tends to establish the amount of the investment in the McGinnis Company, which the plaintiff contends is a measure of its damages. This evidence may be considered by you.* You should, however, consider whether or not the total of this investment is to be lost or whether the plaintiff could have or should have taken reasonable steps to salvage its investment such as taking a new line of pianos and organs or selling what is left of its business." (Emphasis added.)

We read these instructions as permitting the jury to add McGinnis' unrecouped investment and future profits in computing damages, and this is clearly error. McGinnis now argues, however, that the court intended and the jury understood the instructions to require that the jury award either for unrecouped investment or loss of profits. We do not agree. Moreover, this argument is inconsistent with the one its counsel made to the jury.

> "* * * [T]he Court will instruct you that the damages are to be measured *by what you think the future profits would have been for a reasonable period of time and the lost investment.*
>
> * * * * * *
>
> "First of all, we have got the lost investment here as shows by Mr. Diracles' total investment of $97,000. Then if the complete liquidation was possible—and he wasn't sure if it was, and this is difficult to determine—there would be $56,087 lost investment, actual investment lost. Let's round that out to $50,000. Let's say the profits for these five years would have averaged $20,000 a year. Five times that is a hundred thousand dollars. (Writing on paper mounted on an easel.) Add that to the lost investment and that is $150,000." (Emphasis added.)

## ERRORS IN THE ADMISSION AND EXCLUSION OF EVIDENCE

[redacted] Yamaha contends that the trial court erred in admitting certain evi-

**482**

dence and excluding other evidence. We do not feel that it is necessary for us to decide whether the trial court erred in cited instances. We have confidence that it will exercise its discretion in a proper manner on retrial. But we do emphasize that under the recoupment theory, recovery is limited to the unrecouped investment. Thus, care must be exercised in receiving evidence as to past expenses so that the jury does not get the impression that recovery can be had for normal operating expenses. See, Ag-Chem Equipment Co., Inc. v. Hahn, Inc., etc., et al., 480 F.2d 482 (8th Cir., 1973).

We reverse and remand for a new trial.