OT INDUSTRIES, INC., Appellant (C2–83–1729), Respondent (C4–83–1795),

v.

OT–TEHDAS OY SANTASALO–SOHLBERG AB, et al., Respondents (C2–83–1729), Appellants (C4–83–1795),

Larry M. Lawson, Respondent (C4–83–1795).

Nos. C2–83–1729, C4–83–1795.

Court of Appeals of Minnesota.

Feb. 29, 1984.

Rider, Bennett, Egan & Arundel, Minneapolis, for appellant in C2-83-1729.

Leon R. Bissonette, Larson & Lambert, Wayzata, for appellant in C4-83-1795.

Langlais, Smith, Mooney, Gilbert & Latimore, St. Paul, for respondent Lawson.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LANSING, Judge.

OT Industries, Inc. (OTI) appeals from an order denying its request for a temporary injunction, and OT-tehdas Oy Santasalo-Sohlberg Ab (OT-tehdas) appeals from the denial of its motion for a change of venue and motion to dismiss.

OTI contends that the distributorship agreement between OTI and OT-tehdas is governed by the Minnesota Franchise Act and that OT-tehdas' termination of the agreement was ineffective because it violated the Act. Therefore, OTI contends that the trial court erred in denying OTI's request for a temporary injunction which would enjoin OT-tehdas both from terminating the agreement and from conducting competing activities. OT-tehdas requests that this court determine that the dispute be settled in Finland according to Finnish law. We affirm.

## FACTS

In 1976, OTI's predecessor in interest entered into an oral agreement with OT-tehdas. OT-tehdas is a corporation organized and existing under the laws of Finland, with its principal place of business in Helsinki. OTI is a corporation organized and existing under the laws of Minnesota, with its principal place of business in St. Paul. Under the 1976 agreement, OTI agreed to distribute and market products manufactured in Finland by OT-tehdas. The products bear the trade name "Farmi".

On October 3, 1980, OTI and OT-tehdas entered into a written distributorship agreement in which OTI acquired the exclusive right to market and sell OT-tehdas' agri-electronic products in the United States and Canada. The agreement provided, among other things, that OT-tehdas could serve a notice of termination if OTI violated the stipulations requiring payment and that any dispute would be settled by Finnish courts according to the laws of Finland.

By the end of 1982, OTI owed $13,981 to OT-tehdas. Some of the overdue bills dated from August 1981. OT-tehdas inquired about these debts and received no response. The insurance company that insured OT-tehdas against bad debts informed OT-tehdas that OTI was having increasing credit problems with others. Accordingly, in December 1982, the insurance company lowered the amount of coverage on OTI's account. On March 28, 1983, another payment in the form of a bill of exchange in the amount of $5,517.75 became due and went unpaid. OT-tehdas made inquiries, including a demand for payment, but received no response. At the time the bill of exchange was dishonored, OT-tehdas was holding approximately $200,000 in OTI's bills of exchange about to become due. On May 10, 1983, representatives of OT-tehdas personally told the president of OTI that they would not tolerate continued failure to observe the terms of the contract and demanded that OTI explain why it had not paid the bills of exchange. The president of OTI said the payment was in the mail.

The payment was not received. On May 17, 1983, OT-tehdas served notice on OTI that the agreement would be terminated in 90 days because OTI had failed to pay $19,508.76. On May 20, 1983, OTI fully paid the $19,508.76, but asserted that OT-tehdas actually owed OTI an amount greater than $19,508.76. On June 3, 1983, OTI wrote to OT-tehdas and itemized payments owed to OTI of $35,406.80. Most of this amount was to pay for cooperative advertising under an ancillary agreement. OT-tehdas acknowledged responsibility and paid for approximately half of this amount.

Shortly after OT-tehdas served the notice of termination, OT-tehdas established a new U.S. distributor, Preagro Industries, Inc. Preagro is a wholly owned subsidiary of OT-tehdas. OT-tehdas also registered the trademark and the name of "Farmi" in Minnesota.

OTI learned about the formation of Preagro on September 21, 1983. On September 23, 1983, OTI brought a motion to enjoin OT-tehdas from terminating the agreement, conducting competing activities

and making false and defamatory statements about OTI. On September 28, 1983, OT-tehdas moved to dismiss for lack of jurisdiction and improper service and asked for a change of venue, setting forth the reasons the case should not be heard in Ramsey County.

The trial court issued an order quashing OT-tehdas' demand for change of venue, denying OT-tehdas' motion to dismiss for lack of jurisdiction, and granting OTI's motion for a temporary injunction as to false and defamatory statements by OT-tehdas against OTI, but otherwise denying OTI's request for injunctive relief under the Minnesota Franchise Act.

## ISSUES

1. Did the trial court clearly abuse its discretion in denying a temporary injunction?

2. Did OT-tehdas properly raise the choice of law and selection of forum issues in the trial court?

## ANALYSIS

1. OTI appeals from the decision of the trial court denying its request for a temporary injunction. The trial court found that OTI failed to make a sufficient showing that the 1980 agreement was covered by the Minnesota Franchise Act, Minn.Stat. § 80C.01 *et seq.*, because the agreement did not explicitly grant OTI the right to use the tradenames and it did not require OTI to pay a franchise fee. The trial court further held that, even assuming the Franchise Act applied, OT-tehdas may have had good cause to terminate the agreement.

 "An appeal from an order denying a motion for a temporary injunction is strictly limited in scope." *Hvamstad v. City of Rochester*, 276 N.W.2d 632, 632 (Minn.1979). The trial court's ruling on a motion for a temporary injunction is largely an exercise of judicial discretion. Consequently, this court will only consider whether the trial court clearly abused its discretion by denying the temporary injunction. In this appeal, our court will view the

facts alleged in the pleadings and affidavits in the light most favorable to the party who prevailed below. *Edin v. Jostens, Inc.*, 344 N.W.2d 691 at 693 (Minn.App. 1984).

 This court, citing *Dahlberg Brothers, Inc. v. Ford Motor Co.*, 272 Minn. 264, 137 N.W.2d 314 (1965), and *Miller v. Foley*, 317 N.W.2d 710 (Minn.1982), has specified five factors to be considered in determining whether a temporary injunction should issue:

(1) the nature of the relationship between the parties before the dispute giving rise to the request for relief;

(2) the harm to be suffered by the moving party if the preliminary injunction is denied as compared to that inflicted on the non-moving party if the injunction issues pending trial;

(3) the likelihood of success on the merits;

(4) the public interest; and

(5) administrative burdens in enforcing a temporary decree.

*Edin v. Jostens, Inc.*, 343 N.W.2d at 693 (Minn.App.1984).

 We agree with the trial court that OTI has failed to meet its burden of showing that it is entitled to the extraordinary relief that it requests because there is an insufficient likelihood that it will prevail on the merits. OTI is unlikely to succeed for two reasons. There is insufficient evidence to support OTI's contention that the distributorship agreement between OTI and OT-tehdas is governed by the Minnesota Franchise Act. Even if the Franchise Act applies, the record indicates that OT-tehdas may well have had good cause to terminate within the meaning of Minn.Stat. § 80C.14, subd. 2(b) (1982). Therefore, we cannot say that the trial court clearly abused its discretion.

### Minnesota Franchise Act

 "Franchise" is defined by Minn. Stat. § 80C.01, subd. 4 (1982), and includes three elements. The elements were summarized by the Minnesota Supreme Court

in *Martin Investors, Inc. v. Vander Bie,* 269 N.W.2d 868, 874 (Minn.1978):

(1) A right granted to the franchisee to engage in business using the franchiser's trade name or other commercial symbol, (2) a "community of interest" in the marketing of goods or services between the franchisee and franchiser, and (3) a "franchise fee" paid by the franchisee.

All three statutory elements must be present for a franchise to come within the purview of the Minnesota Franchise Act. *RJM Sales & Marketing, Inc. v. Banfi Products Corp.,* 546 F.Supp. 1368, 1373 (D.Minn.1982). *See Chase Manhattan Bank, N.A. v. Clusiau Sales & Rental, Inc.,* 308 N.W.2d 490, 492 (Minn.1981). Although a community of interest in the marketing of goods was clearly created between OTI and OT-tehdas, it is questionable whether the right to use a trade name or other commercial symbol was granted to OTI and there is no persuasive evidence to support OTI's contention that there was a franchise fee. The absence of either is fatal to the applicability of the Minnesota Franchise Act. We will discuss only the absence of the franchise fee because it is dispositive.

*Franchise Fee*

In order for there to be a franchise, the agreement must be one "for which the franchisee pays, directly or indirectly, a franchise fee * * *." Minn.Stat. § 80C.01, subd. 4(a)(3) (1982). Minn.Stat. § 80C.01, subd. 9 (1982), defines a franchise fee:

"Franchise fee" means any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement, including, but not limited to, the payment either in lump sum or by installments of an initial capital investment fee, any fee or charges based upon a percentage of gross or net sales whether or not referred to as royalty fees, any payment for goods or services, or any training fees or training school fees or charges; provided, however, that the fol-

lowing shall not be considered the payment of a franchise fee:

(a) The purchase of goods or agreement to purchase goods at a bona fide wholesale price;

* * * * * *

(e) The purchase, at their fair market value, of supplies or fixtures necessary to enter into the business or to continue the business under the franchise agreement;

The agreement between the parties makes no provision for the payment of a franchise fee. However, OTI argues that two types of payment made by it constitute a franchise fee: the minimum purchase of 3,000 grain moisture testers per year and the required advertising.

The 1980 distributorship agreement provides that OT-tehdas is entitled to renegotiate the terms of the agreement should OTI not sell a minimum of 3,000 grain moisture testers per year or the equivalent dollar volume of other products. This court recognizes that a minimum volume sales requirement could be a disguised franchise fee if the sales were at prices exceeding bona fide wholesale prices. However, in this case, OTI specifically asks for an injunction so that it may be "permitted to purchase the moisture testers from OT-tehdas at its former factory prices * *." Factory prices are the same as bona fide wholesale prices and thus cannot be construed as payment of a franchise fee under Minn.Stat. § 80C.01, subd. 9(a).

This court also recognizes that a minimum volume requirement, even at bona fide factory prices, may in itself be a franchise fee if the franchisee is required to purchase amounts or items that it otherwise would not. That is not the case here. OT-tehdas and OTI had been working together under an oral agreement for four years before they entered into a formal agreement in 1980. OTI had ample opportunity to know what a reasonable volume requirement would be. There is no indication that this minimum requirement does not have a valid business purpose. More-

over, the failure of OTI to meet this minimum amount requirement would not result in a termination of the contract, but a renegotiation of the terms. This cannot be held to be a hidden franchise fee.

The agreement also provides that OTI shall effectively promote sales in the United States and Canada by advertising, samples, fairs, etc. The trial judge concluded that these advertising requirements were not a franchise fee but an ordinary business expense. We agree.

■ The payments for advertising were not directly made to OT-tehdas but to suppliers. The agreement had no required dollar amount or reserved right of approval. The direct beneficiary of the promotion was OTI. In such a case, the payments are nothing more than ordinary business expenses and do not constitute a franchise fee. *RJM Sales & Marketing, Inc. v. Banfi Products Corp.,* 546 F.Supp. 1368, 1373 (D.Minn.1982).

### Good Cause to Terminate Agreement

■ The trial judge further concluded that even if the Franchise Act governed the relationship between the parties, OT-tehdas may well have had good cause to terminate within the meaning of Minn.Stat. § 80C.14, subd. 2(b). " 'Good cause' shall be failure by the franchisee substantially to comply with reasonable requirements imposed upon him by the franchise * * *." *Id.* OTI failed to comply with reasonable terms of payment imposed by the contract. This failure to pay occurred over an extended period of time and despite inquiries and reminders. When representatives of OT-tehdas demanded an explanation, the president of OTI said the payment was in the mail. When OT—tehdas determined the payment was not in the mail, they sent the notice of termination.

OTI argues that at the time they were notified of the termination, OT-tehdas was actually indebted to OTI in an amount greater than that which OTI owed to OT-tehdas. This claimed debt arose from an agreement to assist OTI with advertising and promotional expenses which provided

that payment would be made after complete documentation by OTI. OTI did not itemize the claimed debt until June 3, 1983. Furthermore, there was no agreement that the contributions for advertising expenses could be used as an offset for payments owed.

OTI also claims that even if grounds for termination existed, OTI cured its indebtedness. No applicable right to cure exists in the Franchise Act or in the agreement between the parties. The notice of termination to OTI clearly stated that there was a termination and gave the reasons.

■ 2. OT-tehdas appeals from the denial of its motion for a change of venue and a motion to dismiss for lack of jurisdiction. In its brief to this court, OT-tehdas rests its arguments solely on the contractual provisions on choice of law and choice of forum contained in the October 1980 agreement between OT-tehdas and OTI. This clause reads:

> In the event of any dispute between the parties relating to or arising out of this agreement, each party will use its best effort to settle such dispute in a friendly manner. In the absence of such settlement the dispute shall be settled by a court in Helsinki, Finland according to the laws of Finland.

OT-tehdas maintains that the trial court's denial of its demand for removal was contrary to Minnesota law because contractual provisions for choice of forum and choice of law are enforceable. We agree that such contractual provisions may be enforceable; however, OT-tehdas did not properly raise the forum selection issue and did not maintain a consistent position on the choice of law issue in the trial court. Its own actions prevented the issues from being properly addressed and decided.

### A. Choice of Forum

On September 28, 1983, OT-tehdas filed a demand for removal pursuant to Minn.Stat. § 542.10 (1982). In its accompanying memorandum, OT-tehdas argued that OTI's alleged causes of action did not, in any sub-

stantial way, arise in Ramsey County. The trial court found that OTI made a sufficient showing that part of the cause of action arose in Ramsey County and therefore the matter would be venued in Ramsey County. We affirm that decision.

OT-tehdas now appeals the decision of the trial court and specifically contends that this dispute should be resolved by the courts of Finland. This is the first time that OT-tehdas has clearly stated that it wants the forum selection clause enforced.

■ OT-tehdas apparently relied on its demand for removal and motion to dismiss on jurisdictional grounds to raise the forum selection issue. This reliance was misplaced. The statute under which the demand for removal was made governs the venue of actions in the district courts of Minnesota and provides for removal from county to county. OT-tehdas' motion to dismiss for lack of jurisdiction also fails to raise the forum selection issue. A contractual forum selection clause is not governed by the rules relating to venue and jurisdiction, but rather by the rules of contractual defenses. *Hauenstein & Bermeister, Inc. v. Met-Fab Industries, Inc.*, 320 N.W.2d 886, 892 (Minn.1982). OT-tehdas should have brought a motion to dismiss based on the forum selection provision of the contract. OT-tehdas has, however, pled the forum selection clause as an affirmative defense, and the court should consider the merits of this defense at the trial.

### B. Choice of Law

When OT-tehdas filed the demand for removal, it submitted a memorandum to the trial court stating "that all issues, including the issue of temporary injunction, should be decided by a court of proper venue under the laws of *this state*." (Emphasis added). In its subsequent brief to the trial court, OT-tehdas did not address the issue of choice of law.

On appeal, OT-tehdas maintains that the trial court erred by not enforcing the choice of law provision contractually agreed upon by the parties.

■ Based on the statement by OT-tehdas "that all issues * * * should be decided by a court of proper venue under laws of this state" and the fact that OT-tehdas cited no cases which clarified its position, it was reasonable for the trial court to assume that OT-tehdas was waiving the clause in the agreement which obligated the parties to settle all disputes according to the laws of Finland. OT-tehdas' present position did not become clear until it submitted its Statement of the Case to this court. Minnesota courts allow parties to a contract to control the choice of law by express contractual provision. *Milliken and Co. v. Eagle Packaging Company, Inc.*, 295 N.W.2d 377 (Minn.1980). If the issue is properly and unambiguously raised by OT-tehdas at the trial on the merits, the trial court should consider the choice of law provisions.

### DECISION

The trial court's order denying OTI's request for a temporary injunction and OT-tehdas' motion to dismiss is affirmed.