**CAMBEE'S FURNITURE, INC., a South Dakota Corporation and Donald E. Hinks, d/b/a Waterbed Company and Pool Center, Appellants,**

v.

**DOUGHBOY RECREATIONAL, INC., a foreign corporation, Appellee.**

No. 86–5325.

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1987.

Decided July 22, 1987.

---

6. Other contentions raised by the parties have been fully considered but do not merit discussion.

Thomas J. Welk, Sioux Falls, S.D., for appellants.

Monte R. Walz, Sioux Falls, S.D., for appellee.

Before ARNOLD, Circuit Judge, and WRIGHT[*] and HENLEY, Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

Plaintiffs Cambee's Furniture, Inc. (Cambee's) and Donald E. Hinks, Cambee's sole shareholder, appeal the district court's order granting summary judgment in favor of the defendant, Doughboy Recreational, Inc. (Doughboy). Plaintiffs' amended complaint in this diversity action seeks damages for Doughboy's termination of Cambee's[1] as an authorized dealer of Doughboy swimming pool products in the Sioux Falls, South Dakota area. The amended complaint alleges violations of the South Dakota Franchise Act, S.D. Codified Laws Ann. §§ 37–5A–1 to –87 (1986); breach of a fiduciary duty; breach of an implied covenant of good faith and fair dealing; breach of contract; and wrongful termination of the distributorship agreement. The district court granted Doughboy's motion for summary judgment on each of plaintiffs' claims, and this appeal followed. We affirm in part and reverse in part.

## I. BACKGROUND

For the purpose of reviewing on appeal the order granting summary judgment, the following facts will be taken as established. In April of 1981 Hinks contacted Chuck Brount, Doughboy's authorized manufacturer's representative, to inquire about obtaining a Doughboy franchise. The parties entered into an oral agreement permitting Hinks to distribute Doughboy products provided that he purchase annually at least $15,000.00 to $20,000.00 worth of swim-

---

[*] The Honorable Eugene A. Wright, United States Senior Circuit Judge for the Ninth Circuit, sitting by designation.

1. In this opinion we shall refer to plaintiffs as "Cambee's," except where we speak of Hinks individually.

ming pools or a minimum of fifteen pools.[2] Hinks was to be the exclusive dealer within a one hundred mile radius in the Sioux Falls area. The question whether the agreement constituted a franchise is disputed. Plaintiffs concede that Brount told Hinks he could not give him a written franchise, but say that Brount promised one orally. Defendant denies that Brount used the word "franchise." In any event, Hinks maintains that he was promised an exclusive dealership in the delineated area for as long as he met the minimum purchase requirements.

Pursuant to the agreement, Hinks purchased $14,683.00 worth of Doughboy products in 1981, and in subsequent years made purchases exceeding Doughboy's minimum requirements. In 1983 and 1984 Hinks received letters from Doughboy's president praising the quality of his performance and referring to him as the only factory authorized dealer in the Sioux Falls area.

Starting in 1983 Hinks began receiving indications that others were distributing Doughboy products in the area covered by his agreement with Brount. Hinks received a letter from Delux Distributors in Omaha indicating that he could purchase Doughboy pools. Hinks wrote to Brount to complain and also communicated directly with Doughboy about his concerns. Hinks then learned that the proprietor of a competing store, Waterbed Factory Showroom, maintained a Doughboy swimming pool at his residence in Sioux Falls as a display for sales. In 1984 Waterbed Factory Showroom became a franchisee operation of Rec Room Shoppe of Omaha, Inc., which is associated with Delux. The Rec Room Shoppe ran an advertisement in the Sioux Falls Argus Leader in August, 1984 picturing Doughboy pools, but stating that they were not available in Sioux Falls. Hinks called Rec Room's attorney, who he claims told him that she had heard Rec Room was selling Doughboy pools in Sioux Falls. John Holm, a pool installer who worked for Hinks, told Hinks he observed a Doughboy swimming pool at the Rec Room Shoppe parking lot in Sioux Falls in 1984.

Acting on his belief that Doughboy was permitting its swimming pools to be sold within his exclusive area, Hinks in September of 1984 informed Doughboy that he was withholding payment on his account with Doughboy because of the failure to resolve his complaints. In October of the same year Mr. Brount solicited Cambee's order for 1985. Then, in January of 1985 Doughboy sent a written notice to Hinks informing him that his Doughboy dealership was terminated. Although the Cambee's account was not delinquent when the termination notice was sent, Hinks had been late in paying Doughboy for merchandise in the past. Doughboy asserts that Cambee's record of delinquent payments formed the basis for the termination.

The district court found that no franchise existed under South Dakota law inasmuch as no franchise fee was paid for the distributorship. The district court rejected as a matter of law plaintiffs' argument that the minimum purchase requirement amounted to a franchise fee. The court dismissed the claim for breach of a fiduciary duty along with the franchise claim, finding the former dependent on the latter. The court found the existence of a contract between plaintiffs and Doughboy, but determined that Doughboy had not breached it, reasoning that the contract was of indefinite duration and therefore terminable at will by either party. The wrongful termination claim was dismissed as the same cause of action alleged in the count for breach of contract, and plaintiffs' claim that Doughboy violated an implied covenant of good faith and fair dealing was dismissed as well.

## II. THE FRANCHISE CLAIM

Plaintiffs allege that the distributorship agreement established a franchise, and that defendant violated the South Dakota

2. Hinks did not purchase the minimum amount the first year as Doughboy was unable to fill his order completely. The record is unclear as to the precise dollar amount that would meet the minimum requirement, but the parties have not raised this as an issue and we do not consider it significant to our decision.

Franchise Act by failing to register the purported franchise. S.D. Codified Laws Ann. § 37–5A–6 (1986). Consequently, plaintiffs seek treble damages and attorney's fees as provided by the Act. §§ 37–5A–83 to –85. Plaintiffs also allege that Doughboy owed Cambee's a fiduciary duty arising from the franchise relationship, and that Doughboy breached that duty.

A franchise exists under South Dakota law when the following elements are present: (1) a grant to the franchisee of the right to use the trade name, commercial symbol or advertising of the franchisor; (2) a community of interest in marketing the goods or services; and (3) a franchise fee, "which the franchisee is required to pay, directly or indirectly...." § 37–5A–1 (1986). Each of these elements must be present before a court may find that the parties have entered into a franchise agreement. *See OT Industries v. OT-Tehdas Oy Santasalo-Sohlberg AB*, 346 N.W.2d 162, 166 (Minn.Ct.App.1984) (construing a substantially similar provision of the Minnesota Franchise Act, Minn.Stat. § 80C.01 subd. 4(a) (1982)). The presence of the third element, the payment of a franchise fee, is at issue here.

The South Dakota Franchise Act broadly defines a franchise fee as "any fee or charge ... for the right to enter into a business or to continue a business under a franchise agreement...." S.D. Codified Laws § 37–5A–3 (1986). The Act narrows this definition somewhat by excluding

"[t]he purchase of goods or agreement to purchase goods at a bona fide wholesale price." § 37–5A–4(1). Hinks does not deny that the price he paid for Doughboy pools was a bona fide wholesale price; rather he urges that a franchise fee may be found in the requirement that he make a minimum purchase of a certain quantity of Doughboy's pools or expend a minimum dollar amount.[3]

The Supreme Court of South Dakota has not directly confronted the issue whether a minimum purchase requirement may constitute a franchise fee.[4] Plaintiffs do not argue that a minimum purchase provision in a franchise agreement is always a franchise fee. Instead, they urge that we apply the principles developed by the Minnesota Court of Appeals, which has stated that "a minimum volume requirement, even at bona fide factory prices, may in itself be a franchise fee if the franchisee is required to purchase amounts or items that it otherwise would not." *OT Industries*, 346 N.W.2d at 166. The court also analyzed the purchase requirement in terms of whether it served a valid business purpose. *Id.* In a subsequent decision the Minnesota Court of Appeals stated that its holding in *OT Industries* turned on whether the required purchase "correspond[s] to the reasonable requirements of the business." *American Parts System, Inc. v. T & T Automotive, Inc.*, 358 N.W.2d 674, 676 (Minn.Ct.App.1984).[5]

---

3. Cambee's makes no claim that its advertising expenses, which it asserts a right to recoup on its contract claim, constitute a franchise fee. *See Boat & Motor Mart v. Sea Ray Boats, Inc.*, 817 F.2d 573, 578–79 (9th Cir.1987).

4. In a decision predating the franchise statute, the state's supreme court indicated in a footnote that an $8,500.00 expenditure for inventory and equipment that Mobil Oil required a dealer to obtain before opening a service station was not a franchise fee. *Aschoff v. Mobil Oil Corp.*, 261 N.W.2d 120, 122 n. 3 (S.D.1977). In *Arnott v. American Oil Co.*, 609 F.2d 873, 883 (8th Cir. 1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980), a panel of this court deferred to a district judge's treatment of the South Dakota Franchise Act as a codification of preexisting law. *Aschoff's* value as precedent in

this case is somewhat attenuated, however, as it involved a suit seeking damages for deceit in inducing the execution of a contract and lease; the existence of a franchise was not at issue, and the court mentioned it only in passing. The court may have found nothing unreasonable in the required payment, and thus it would have had no occasion to consider Cambee's "reasonable business purpose" argument which we examine *infra*.

5. In neither of the Minnesota cases did the court find a franchise fee. *Cf. Communications Maintenance, Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1206 (7th Cir.1985) (promise of future performance of subcontracts for installation and maintenance of all defendant's customers' radios was not a franchise fee as it did not accord with normal meanings of "fee" or "pay").

The district court did not choose to follow the Minnesota rule in interpreting the law of South Dakota. When, as here, the state's highest court has not decided a question, the trial judge's interpretation "is entitled to substantial deference unless it is 'fundamentally deficient in analysis or otherwise lacking in reasoned authority.'" *Dabney v. Montgomery Ward & Co.*, 761 F.2d 494, 499 (8th Cir.), *cert. denied*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985) (quoting *Kansas City Power & Light v. Burlington Northern R.R.*, 707 F.2d 1002, 1003 (8th Cir.1983)).

■ Section 37–5A–1(3) of the South Dakota Franchise Act includes indirect payments in its definition of a franchise fee. Thus, we are called upon to determine whether a minimum order requirement may fall within that definition. An indirect payment might be found, for example, in a markup on the goods or services a franchisee is required to purchase, or in a price discount on goods or services the franchisee is required to provide the franchisor. *See Communications Maintenance, Inc.*, 761 F.2d at 1206 n. 3 (discussing Illinois franchise regulations); Fern, *The Overbroad Scope of Franchise Regulation: A Definitional Dilemma*, 34 Bus.Law. 1387, 1392 (1979) (discussing various types of payments which might constitute a franchise fee). Nothing in this case, however, indicates that Cambee's paid a hidden or indirect fee for the right to sell Doughboy pools, or that the payments made were for anything other than merchandise contemplated by the contract. *See Carlucci v. Owens-Corning Fiberglass Corp.*, 646 F.Supp. 1486, 1495 (E.D.N.Y.1986); *Laurence J. Gordon, Inc. v. Brandt, Inc.*, 554 F.Supp. 1144, 1160 (W.D.Wash.1983). Nor does Cambee's allege that the required quantities were so unreasonably large that they could not be resold within a reasonable time. *Marathon Petroleum Co. v. LoBosco*, 623 F.Supp. 129, 134 (N.D.Ill. 1985) (construing Illinois franchise regulations).

**6.** Appellant has cited no authority other than the Minnesota Court of Appeals decisions in *OT Industries* and *American Parts Systems* in support of its argument that a minimum purchase requirement may amount to a franchise fee. Nor do those cases cite any authority for that rule prior to *OT Industries*.

■ Moreover, the plain language of the South Dakota Franchise Act provides that the purchase of or agreement to purchase goods at a bona fide wholesale price "*shall not* be considered the payment of a franchise fee...." S.D.Codified Laws § 37–5A–4(1) (emphasis added). The statute provides for no exception based on the quantity of merchandise a distributor is required to purchase. Thus, the plain language of the Act supports the district court's interpretation, and we cannot say that its rejection of a rule established by the intermediate court of another jurisdiction [6] resulted from a fundamental deficiency in analysis or was lacking in reasoned authority. Without the payment of a franchise fee, the South Dakota statute provides no protection. *See Bitronics Sales Co. v. Micro-semiconductor Corp.*, 610 F.Supp. 550, 555 (D.Minn.1985). We therefore affirm the grant of summary judgment on Cambee's franchise claim.

■ Nor did the district court err in dismissing the claim for breach of a fiduciary duty arising from the franchise relationship. While no such relationship existed here, we affirm on an additional ground as well. Cambee's relies on *Arnott v. American Oil Co.*, 609 F.2d 873, 882 (8th Cir. 1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980), for the proposition that the parties to a franchise act as fiduciaries. We have construed the holding in *Arnott* differently, as resting on the implied covenant of good faith and fair dealing, and have held that a franchise or other ordinary business relationship does not alone create fiduciary duties. *Bain v. Champlin Petroleum Co.*, 692 F.2d 43, 47–48 (8th Cir.1982); *see W.K.T. Distributing Co. v. Sharp Electronics Corp.*, 746 F.2d 1333, 1336–37 (8th Cir.1984). Consequently, even had Cambee's established the existence of a franchise we would affirm on the ground that Doughboy had no fiduciary obligations to the plaintiffs.

## III. THE CONTRACT TERMINATION CLAIM

The district court, as indicated, found that the parties had formed a contract by which plaintiff became a distributor or dealer of Doughboy products in the greater Sioux Falls area. But the court found further that defendant had not breached the contract as it was, in the court's view, terminable at will by either party, and that Doughboy therefore was under no continuing duty to supply merchandise to the plaintiffs. Plaintiffs argue that Doughboy was obligated to give Cambee's a reasonable time to recoup its investment in the distributorship.

In general, a contract providing for no fixed term is terminable at will by either party. *Martin v. Equitable Life Assurance Society of the United States,* 553 F.2d 573, 574 (8th Cir.1977) (decided under South Dakota law). However, a panel of this court has held recently that, under South Dakota law, a "continual, binding distributorship agreement" may be inferred from the conduct of the parties, and that the duration of the contract is a question of fact for the jury. *Famous Brands, Inc. v. David Sherman Corp.,* 814 F.2d 517, 520–21 & n. 6 (8th Cir.1987). We noted that, "at the very least,[7] [the distributor] would be entitled to rely on the supply agreement, if the jury finds that one existed, for a reasonable time so as to recoup its investment in the promotion and sale of the [manufacturer's] product." *Id.* at 521 n. 6.

Although *Famous Brands* is of importance in deciding Cambee's claim, the two cases arguably are distinguishable inasmuch as, in *Famous Brands,* the defendant manufacturer apparently did not argue that the contract was terminable at will.

Instead, the manufacturer argued that the agreement was too indefinite to be enforceable and that it held no mutuality of obligation. Thus, *Famous Brands* may not directly contradict the district court's conclusion that the contract between Doughboy and Cambee's was terminable at will. For instance, we do not read *Famous Brands* to hold that the jury is permitted to infer from the mere conduct of a business relationship that any particular durational term was intended by the parties. Specific conduct or other facts or circumstances providing a sound basis for overriding the normal rule that a contract providing for no duration is terminable at will must be present before the jury may be permitted to infer a contrary intent by the parties. *See McGinnis Piano & Organ Co. v. Yamaha International Corp.,* 480 F.2d 474, 479 (8th Cir.1973) (construing Minnesota law, rejecting instructions permitting "the jury to find that the agreement could continue for as long as McGinnis performed satisfactorily."). For example, in *Arnott,* 609 F.2d at 884, we held that the obligation of good faith and fair dealing (a topic to be discussed elsewhere in this opinion) prevented the defendant from terminating a franchise agreement without cause.[8] The defendant in *Arnott* was shown to have made material misrepresentations and to have acted in a manner that defeated the distributor's long term expectations based on the defendant's future profit projections and practice of long-term renewals. *Id.* at 880, 887. Aside from its recoupment claim, Cambee's raises no similar allegation of conduct by the parties that would permit a jury to conclude that their agreement was anything other than terminable at will. The question, then, is what expectation for a continuing

---

**7.** In addition, we have held the distributor is entitled to reasonable notice in order to arrange his affairs or to seek alternate sources of supply. *Berryfast, Inc. v. Zeinfeld,* 714 F.2d 826, 829 (8th Cir.1983); *Lockewill, Inc. v. United States Shoe Corp.,* 547 F.2d 1024, 1030 (8th Cir.1976), *cert. denied,* 431 U.S. 956, 97 S.Ct. 2678, 53 L.Ed.2d 272 (1977); *see also Ag-Chem Equipment Co. v.*

*Hahn, Inc.,* 480 F.2d 482, 487 n. 5 (8th Cir.1973). Cambee's has not argued on appeal that Doughboy failed to give reasonable notice.

**8.** Although the agreement in *Arnott* was made prior to the passage of the South Dakota Franchise Act, we looked to the Act for guidance as

relationship with Doughboy could Cambee's legitimately hold? [9]

We have previously confronted the problem of distributorship agreements containing no fixed termination date. In cases arising under Minnesota law, we held that the manufacturers breached their contracts by terminating dealerships without just cause before the dealers had a reasonable time to recoup their expenses. *W.K.T. Distributing Co.*, 746 F.2d at 1335–36; *Ag-Chem Equipment Co.*, 480 F.2d at 486–88; *Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.*, 395 F.2d 388, 390 (8th Cir. 1968) (cited with approval in *Famous Brands*, 814 F.2d at 521 n. 6). In *Clausen* [10] we held that the plaintiff's right of recoupment arose from an "implied contract," based on the requirement that the distributor was required to make certain investments in the business by the manufacturer. *Clausen*, 395 F.2d at 391. However, other recoupment cases have not turned on express requirements by the manufacturer, but require only that the agent be " 'induced by his appointment....' " *Lockewill*, 547 F.2d at 1029 (quoting *Beebe v. Columbia Axle Co.*, 233 Mo.App. 212, 218, 117 S.W.2d 624, 629 (1938)). "If the agent pays for his employment, as where he invests in the business or is put to considerable expense, it may be found that the parties had contracted for a reasonable time, if no time was specified." W. Seavey, *Handbook of the Law of Agency* § 170, at 272 (1964) (footnotes omitted). *See* Restatement of the Law of Agency (Second) § 442, comment c. The South Dakota statutes concerning agency relationships are consistent with this rule. S.D.Co-

dified Laws §§ 59–7–1 and –2 (1978) provide for revocation of an agent's authority only when the agency is not coupled with an interest.[11]

A reasonable time has generally been construed to be that necessary for the dealer to recoup his investment of time, labor and money. *See, e.g., Berryfast, Inc.*, 714 F.2d at 829; *Lockewill*, 547 F.2d at 1029 (recoupment under Missouri law allowed on quantum meruit basis); *Ag-Chem Equipment Co.*, 480 F.2d at 486–87; *Clausen*, 395 F.2d at 391; *Allied Equipment Co. v. Weber Engineered Products, Inc.*, 237 F.2d 879, 882 (4th Cir.1956). In *Famous Brands*, 814 F.2d at 521 n. 6, the court expressly approved of the recoupment doctrine under South Dakota law. Thus, we hold that a distributor is entitled to a reasonable period to recoup its investment, during which the agreement may not be terminated without good cause. *W.K.T. Distributing Co.*, 746 F.2d at 1335–36; *Ag-Chem Equipment Co.*, 480 F.2d at 487. After the reasonable recoupment period has expired, the distributorship agreement becomes terminable at will upon reasonable notice.

Doughboy argues that Cambee's amended complaint alleges only that Doughboy breached its contract by allowing other dealers to sell its products in the Sioux Falls area, and that Cambee's raises its recoupment theory for the first time on appeal. The record reveals, however, that the complaint states a cause of action for wrongful termination, and that the Plaintiffs' Statement of Disputed Facts filed

---

declaratory of the common law of South Dakota.

**9.** *Cf.* Lockerby, *Franchise Termination Restrictions: A Guide for Practitioners and Policy Makers*, 30 Antitrust Bull. 791, 871 (1985): rule regarding franchise terminations should "minimize[ ] the loss to the terminated franchisee and provide[ ] compensation for unrecouped investments made in reasonable contemplation that the relationship would continue."

**10.** Although *Clausen* involved a franchise, the principles enunciated in that case are applicable here even though we have found no franchise exists under the South Dakota Act. *Clausen* was apparently decided under general contract principles rather than a franchise statute. The rules

for franchises, to the extent they have been developed outside of an express statutory scheme, should apply equally to distributorships such as the one in this case, as both types of agreements involve "relational contracts" posing the same practical problems. *See* Lockerby, *supra* note 9, at 837.

**11.** The same result obtains although the contract is a sales and distribution agreement rather than a true sales agency contract. *Kelly-Springfield Tire Co. v. Bobo*, 4 F.2d 71, 72 (9th Cir.), *cert. denied*, 268 U.S. 694, 45 S.Ct. 513, 69 L.Ed. 1161 (1925); W. Jaeger, *Williston on Contracts* § 1017A at 138, 152 (3d ed. 1967).

with the district court asserts as in dispute "[w]hether the business relationship between the Plaintiffs and Doughboy was ... terminated without adequate notice to Cambee's and in violation of the agreement ... before the plaintiffs were allowed a reasonable time to recover their investment."

Doughboy further argues that Cambee's offered no affidavits in opposing the summary judgment motion in support of its recoupment claim. This argument misapprehends the burdens of proof the parties to a summary judgment proceeding must meet. The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Foster v. Johns-Manville Sales Corp.*, 787 F.2d 390, 391 (8th Cir.1986). Nothing in the affidavits submitted by Doughboy purports to negate the existence of facts supporting Cambee's claimed investment, and it can hardly be assumed that Hinks invested no time or labor in promoting Doughboy's products. *Lockewill*, 547 F.2d at 1029. Therefore defendant did not meet its initial burden with respect to the recoupment issue, and summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60, 90 S.Ct. at 1609; *Foster*, 787 F.2d at 393; *Economy Housing Co. v. Continental Forest Products, Inc.*, 757 F.2d 200, 201-02 n. 3 (8th Cir.1985).

In summary, the district court erred in reasoning that Doughboy was entitled to summary judgment on the contract termination claim, and we reverse on that count.

## IV. THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Cambee's alleges Doughboy violated an implied covenant of good faith and fair dealing by terminating Cambee's distributorship. Doughboy argues that South Dakota has not recognized breach of the good faith and fair dealing covenant as a separate cause of action. Cambee's points to South Dakota's U.C.C. provision that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement." S.D.Codified Laws § 57A-1-203 (1980). "'Good faith' in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." S.D.Codified Laws § 57A-2-103(1)(b). In addition, the Supreme Court of South Dakota has applied a test of good faith to protect an aggrieved party from unfairness in the performance of a contract not falling within the ambit of the code. *Teigen Construction, Inc. v. Pavement Specialists, Inc.*, 267 N.W.2d 574, 578 (S.D.1978) (requirements contract). The court has authorized a cause of action for an insurer's bad faith in refusing to settle within policy limits, *Kunkel v. United Security Insurance Co. of New Jersey*, 84 S.D. 116, 121-22, 168 N.W.2d 723, 726 (1969),[12] and has examined for good faith a party's performance or enforcement of contracts in a variety of other settings. *See, e.g., Hicks v. Brookings Mall, Inc.*, 353 N.W.2d 54, 56 (S.D.1984) (tenant exercised good faith in attempting to operate business profitably); *Richardson v. Afdahl*, 313 N.W.2d 457, 460 (S.D.1981) (seller's good faith in refusing to complete sale a question for the jury); *Brezina Construction Co. v. South Dakota Department of Transportation*, 297 N.W.2d 168, 169-70 (S.D.1980) (engineer designated by parties determine questions related to execution must act in good faith); *Schneider v. McLaughlin Independent School District No. 21*, 90 S.D. 356, 367, 241 N.W.2d 574, 579 (1976) (decision not to renew principal's contract made in good faith). Thus, we find South Dakota law in accord with our statement that "[i]n *every* contract there is

---

**12.** However, we are aware of no case outside the insurance area in which the South Dakota courts have authorized a cause of action in tort for bad faith in the performance of general commercial contracts. *See, e.g., Battista v. Leb-anon Trotting Association*, 538 F.2d 111, 118 (6th Cir.1976) (refusing to extend bad faith tort applicable in insurance cases to other commercial settings).

an implied covenant of good faith and fair dealing ...." *Bain*, 692 F.2d at 47. We need not, in this case, construe the covenant of good faith and fair dealing to state a separate cause of action. We merely point out that South Dakota law permits consideration of a party's good faith and fairness as an aid to contract interpretation.

■ Cambee's had a reasonable expectation that, absent good cause for termination, the distributorship agreement would endure for a period sufficient to allow Cambee's to recoup its investment, and we need have no fear that applying the good faith obligation would override an express contractual term, as the agreement between the parties is silent as to duration or the power to terminate.[13]

The covenant of good faith and fair dealing serves at least two functions in this case. First, it tends to support the conclusion that an implied term of the agreement is that Cambee's would have an opportunity to recoup. Second, it offers a means to analyze Doughboy's claim that it terminated the agreement for good cause. Doughboy argues that, even assuming Cambee's otherwise had a right to recoup its alleged investment, Doughboy terminated the agreement for good cause, Cambee's alleged poor payment and credit history. Cambee's counters with evidence that its Doughboy account was current as of the termination date. Further, Cambee's produced evidence showing that Doughboy's credit manager did not consider the late payments a serious problem, and that he considered Cambee's withholding of payments justified in light of the unresolved dispute over the alleged incursions by other dealers into Cambee's exclusive territory.

Consequently, a genuine issue of material fact arises as to whether Doughboy exercised good faith in asserting Cambee's credit history as its motive for termination, or whether it was merely a pretext for terminating the relationship. *See Carlson Machine Tools, Inc. v. American Tool, Inc.*, 678 F.2d 1253, 1262 (5th Cir.1982) (factual question arose as to whether manufacturer's asserted "just cause" for termination was pretextual, notwithstanding contract provision that manufacturer was to be the sole judge of whether to continue); *cf. Carlson Equipment Co. v. International Harvester Co.*, 710 F.2d 481, 482–83 (8th Cir.1983) ("good faith" instruction afforded protection provided by "good cause" term in contract).

In short, we agree with the district court that Cambee's assertion of the implied covenant of good faith and fair dealing does not state a claim separate from the breach of contract claim. Even so, the existence of a terminable at will contract does not obviate the parties' obligation to act in good faith, and Cambee's is entitled to have the trier of fact determine whether Doughboy may overcome the recoupment claim by demonstrating good cause, asserted in good faith, for termination.[14]

## V. EXCLUSIVE TRADE AREA

■ Cambee's alleges that Doughboy breached its agreement to allow Cambee's to operate as the exclusive distributor of Doughboy products in the Sioux Falls area. The district court construed this claim as the same cause of action stated in the wrongful termination count. We cannot entirely agree. Although somewhat related, the two claims are patently distinct;

---

**13.** At first blush it may seem specious to apply the obligation of good faith more readily to a contract that is silent as to the termination power than to one that provides expressly for at-will termination; both result in a contract terminable at will. The difference, of course, is that in the latter case the parties have made their agreement explicit and no occasion to divine their intent or supply implied terms arises. In the former case, the converse is true.

**14.** Cambee's also alleges Doughboy acted in bad faith in refusing to provide parts necessary to complete Cambee's existing inventory after the termination. The evidence shows, however, that Doughboy expressed its willingness to ship parts on a cash with order basis, as opposed to C.O.D. as requested by Cambee's. Although we have ruled that a jury could find that Cambee's credit history did not constitute a good faith reason for termination, we cannot say that it was error as a matter of law for the district judge to determine that Doughboy was entitled to demand cash with order. Thus, we affirm the grant of summary judgment as to that claim.

Doughboy was obligated to give reasonable notice of termination before it could be allowed to permit other distributors to operate in any exclusive area of Cambee's. It could not terminate Cambee's exclusive rights simply by doing business with Cambee's competitors. Thus, until Cambee's received reasonable notice of termination, it was entitled to exercise and enforce such exclusive rights as it had in the Sioux Falls area.

Doughboy vigorously denies that it breached the exclusive area term of its agreement with Cambee's, and the evidence it presents in defense of that claim is substantial. This dispute, however, we need not presently decide; rather it is appropriate for the matter to be addressed in the first instance by the trial court. Because that court did not fully consider the exclusive area claim on its own merits independently of the termination claim, on remand that claim may be the subject of further proceedings.

## VI. CONCLUSION

From the preceding discussion it follows that on the franchise and fiduciary issues the judgment of the district court is affirmed. On the contract claims, the judgment is reversed as to the wrongful termination issue and the cause remanded for further proceedings consistent with this opinion.

Cambee's motions for certification of state law questions to the South Dakota Supreme Court are denied.